533 A.2d 143

**Judith BARCLAY, Appellant,**

v.

**David BARCLAY, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 3, 1987.

Filed Nov. 5, 1987.

1. Because of our disposition of appellant's first claim we do not reach the merit of the remaining claim.

David I. Grunfeld, Philadelphia, for appellant.

Thomas A. Winkelspecht, Philadelphia, for appellee.

Before CAVANAUGH, ROWLEY and MONTEMURO, JJ.

MONTEMURO, Judge:

This appeal concerns the custody of a three-year-old girl, L.L.B.

Appellant, J.B., and appellee, D.B., were married in August of 1982. L.L.B. was born on May 6, 1984. On August 9, 1984, appellant filed a complaint in divorce. Following a final separation of the parties in December of 1984, appellant and L.L.B. resided with appellant's mother. Appellee visited L.L.B. during 1985, and on July 15, 1985, appellee filed a petition seeking partial custody of the child. On November 26, 1985, an agreed order granting custody of L.L.B. to appellant and partial custody rights to appellee was entered into by the parties and approved by the Court of Common Pleas of Philadelphia.

On May 28, 1986, appellant filed a petition to modify the custody order. In this petition, appellant asserted that a substantial change in circumstances had occurred following

the entry of the agreed custody order of November 26, 1985. Specifically, appellant alleged that her suspicion that her husband, appellee herein, was not the natural father of L.L.B. had been confirmed, and that "one P.B. has been shown to be the natural father by blood test." Further, appellant asserted that it would be in the best interests of L.L.B. to have *no* time with appellee because "the child is more familiar with P.B." than with the appellee and appellant "is engaged to marry P.B." [1] Following a hearing on the matter, the trial court denied appellant's petition to modify the custody order of November 26, 1985, finding that appellant had failed to establish a substantial change in circumstances since the entry of that order. The appellant argues on appeal that the trial court erred in its conclusion that the facts presented before the court were not sufficient to constitute a substantial change in circumstances, thus warranting a reconsideration of the existing custody order.

Our supreme court has recently enunciated the appropriate standard of review in custody matters. In *Lombardo v. Lombardo*, 515 Pa. 139, 527 A.2d 525 (1987), the Court reiterated the long standing principle that a broad or searching appellate review is proper, and indeed, necessary in custody matters to insure that the focus of the trial court was on the best interests of the child. *Id.*, 515 Pa. at 147, 527 A.2d at 529. Thus, as the Court stated in *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 294–295, 368 A.2d 635, 637 (1977), "an appellate court is not bound by deductions and inferences made by a trial court from the facts found, ... nor must a reviewing court accept a finding which has no competent evidence to support it." However, this broad scope of appellate review in custody matters does

---

1. At the hearing on September 12, 1986, appellant orally amended her petition to assert, in addition, that appellee was unable to handle the care of the child correctly and that he was unfit to have custody of the child. The trial court, in its opinion, specifically found that appellant had failed to establish that appellee was a harmful influence on L.L.B. or that his relationship with the child had changed since entry of the agreed custody order. Opinion of Trial Court at 5. Appellant has not raised any issue in her Brief with reference to the disposition of her oral amendment by the trial court. As a result, we need not address this issue.

532

not allow us to usurp the fact-finding function of the trial court. In *Lombardo*, the court cited with approval our language in *Commonwealth ex rel. Rainford v. Cirillo*, 222 Pa.Super. 591, 597–598, 296 A.2d 838, 841 (1972):

We have recognized that the trial judge is in a position to evaluate the attitudes, sincerity, credibility, and demeanor of the witness. Because we are not in such a position, we have recognized that a trial judge's determination of custody should be accorded great weight. Only where we are constrained to hold that there was a gross abuse of discretion should an appellate court interfere with the decisions of the hearing judge.

Thus, in the case before us, we must determine whether the trial court's "incontrovertible factual findings support the trial court's factual conclusions, but may not interfere with those conclusions unless they are unreasonable in light of the trial court's factual findings ... and thus represent a gross abuse of discretion." *Lombardo, supra,* 515 Pa. at 148, 527 A.2d at 529 (quoting *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 237, 478 A.2d 800, 806 (1984)) (citations omitted). Upon a thorough review of the opinion of the trial court and of the record, we find that that trial court's factual conclusions were supported by competent evidence. Thus, finding no gross abuse of discretion, we must affirm.

■ In order to justify a court's reconsideration of a valid prior custody order, the burden rests upon the party seeking modification of that order to prove a substantial change in circumstances following entry of the prior order. *Daniel K.D. v. Jan M.H.,* 301 Pa.Super. 36, 446 A.2d 1323 (1982). This burden is not relaxed because a custody order is entered into by agreement of the parties, as in the case at bar, without a hearing on the merits. *Espersen v. Davidow,* 359 Pa.Super. 531, 519 A.2d 479 (1986). Nor is the burden lessened when a party seeks modification of a partial custody order as opposed to an order providing for full custody. *Agati v. Agati,* 342 Pa.Super. 132, 492 A.2d 427 (1985). It is only *after* a substantial change in circumstances is established, that both parents share equally in

the burden of demonstrating, that the child's best interests will be served by the granting of custody to them. *Gonzalez v. Gonzalez*, 337 Pa.Super. 1, 6, 486 A.2d 449, 452 (1984) (citing *English v. English*, 322 Pa.Super. 234, 469 A.2d 270 (1983); *Daniel K.D. v. Jan M.H., supra.*)

In the case before us, the trial court determined that appellant had failed to prove a *substantial* change in circumstances following entry of the November 1985 custody order. Although blood tests taken in the spring of 1986 further convinced appellant that P.B. is L.L.B.'s natural father, the trial court found that appellant had believed that P.B. was the natural father of her child even during her pregnancy when she was married and living with appellee.[2]

Appellant testified that in July of 1983, when she was separated from appellee for a period of one and one-half weeks, she engaged in sexual relations with P.B. (N.T. at 15a and 44a). Nine months later, L.L.B. was born. The trial court specifically noted appellant's testimony that when she first saw L.L.B., she believed she looked like P.B. (N.T. at 20a). Appellant testified that throughout 1984 and 1985, she felt that the father of the child was P.B. (N.T. at 23a). Thus, the changed circumstance since the entry of the agreed custody order of November 26, 1985 has been appellant's decision to seek to prove in court that her suspicions regarding the paternity of P.B. are correct and *not* a new discovery that appellee may not be L.L.B.'s natural father. The only other change in circumstance found by the trial court is appellant's intention to marry

---

**2.** The parentage testing report issued by the Penn Jersey Regional Red Cross Blood Service states that P.B. is not excluded as the father of L.L.B. The report also states that the probability that P.B. is the father of L.L.B. is "99.898% as compared to a random man." The appellee, D.B., has not submitted to blood testing. We note that 42 Pa.C.S.A. § 6136 provides that if all experts agree that blood test results *exclude* an individual as a possible father, then the question of paternity is conclusively resolved. However, in *Turek v. Hardy*, 312 Pa.Super. 158, 458 A.2d 562 (1983), this court determined that although HLA blood test results may be introduced as some evidence to affirmatively prove paternity, this evidence is *not* conclusive. Instead, blood test results must be considered in conjunction with all of the evidence introduced where a party seeks to prove paternity affirmatively. *See also Smith v. Shaffer*, 511 Pa. 421, 515 A.2d 527 (1986).

P.B. upon her divorce from appellee.  Opinion of Trial Court at 4.  We agree with the trial court that appellant has failed to prove any substantial change of circumstances as would warrant a reconsideration of the November 26, 1985 custody order.

This case can be readily distinguished from those cases where a substantial change in circumstances warranting re-examination of an existing custody order has been found. In *Parker v. MacDonald*, 344 Pa.Super. 552, 496 A.2d 1244 (1985), following an award of shared custody, the mother of the child remarried and because of an improved financial status, she was freed from her need to work.  The mother and her new husband occupied a new home with ample space for the child.  In *Parker*, we found that the mother's changed life-style is "now viewed by the trial court as stable and permanent."  *Id.*, 344 Pa.Superior Ct. at 559, 496 A.2d at 1248.  We agreed with the trial court in *Parker* that significant changes in the circumstances had taken place, allowing the court to reconsider and modify the shared custody order to increase the child's contact with his mother.  In *Espersen v. Davidow, supra,* we found many factors which convinced us that the trial court had erred in finding no substantial change in circumstances since entry of an initial custody order which maintained custody of the minor child, Shannon, in the appellee-mother.  Specifically, we noted that following the entry of the custody order, both of Shannon's parents had remarried.  The father, who did not have a residence at the time of the initial custody order, now had a more than adequate residence.  The father's new wife was a full-time homemaker and was, thus, available to care for Shannon.  Shannon testified that she wanted to change her residence and live with her father and stepmother.  In *Espersen,* evidence was also introduced to show that Shannon's relationship with her stepfather was not a good one and that her present living arrangements were causing her to suffer anxiety and self-perception problems.

The case at bar presents none of the factors which existed in *Parker* and in *Espersen.*  Neither the appellant nor the appellee has changed residence since the agreed

custody order was entered on November 26, 1985. Appellant and L.L.B. continue to reside at the home of appellant's mother. Neither party has remarried because their divorce proceeding is pending. Moreover, there is no evidence in the record to suggest that either party has made any changes in their respective lifestyles. Significantly, appellant was unable to establish that appellee was unfit to have partial custody of L.L.B. or that appellee's visits with L.L.B. have become upsetting or harmful for the child since November of 1985. On the contrary, appellant has merely alleged that appellee's partial custody of L.L.B. may have an adverse effect on the child sometime in the future when the child is older. Appellant testified that she was upset about "... the confusion that is going to come about with her when she gets older when she going to ask me questions: well, Why do I see David? Why do I see daddy? and I have to go and tell her that, well, I was married to David...." N.T. at 75a. Finally, appellant's plans to remarry do not require a re-examination of this custody order. This court has held that even where parties do remarry following the entry of a custody order, remarriage per se is not sufficient to warrant reconsideration of the custody order. *Daniel K.D. v. Jan M.H.,* 301 Pa.Super. 36, 44, 446 A.2d 1323, 1326 (1982); *See also Burr v. Morgart,* 339 Pa.Super. 341, 488 A.2d 115 (1985). Appellant failed to establish any way in which her plans to remarry have so changed the circumstances that reconsideration of appellee's partial custody is warranted. Certainly, there is no evidence that appellant's marriage plans have impaired the relationship between the appellee and his daughter.

Finally, appellant argues that the trial court erred because it refused to consider the evidence of blood tests challenging the paternity of the appellee in determining whether there had been a substantial change in circumstances. We disagree. The opinion of the trial court shows that the court did consider this evidence in reaching its decision. The court concluded, despite the blood tests, that the circumstances surrounding L.L.B. and her parents had not substantially changed following the November 1985

custody order. Even though appellant continued to doubt the paternity of the appellee, as she had since 1983, the trial court correctly recognized that the appellee is presumed to be the natural father of L.L.B. because she was born during the marriage of the parties. *See Connell v. Connell,* 329 Pa.Super. 1, 6, 477 A.2d 872, 875 (1984). More importantly, appellee continued to consider himself to be the natural father of L.L.B. and to act as such following the entry of the November 1985 custody order. It may be that the essence of appellant's argument on appeal is that the trial court erred in not deciding paternity. However, the issue of paternity was not properly before the trial court in a petition to modify the custody order. Appellant may bring this issue squarely before a court by filing a petition to terminate the parental rights of the appellee and allege that he is the presumptive, but not the natural father of L.L.B. *See* 23 Pa.C.S.A. § 2511(a)(3).

Appellee argues in his brief that based on the decision of our supreme court in *Adoption of Young,* 469 Pa. 141, 364 A.2d 1307 (1976) appellant should be equitably estopped from questioning the paternity of the appellee. In *Young,* the court held that the appellant was estopped from questioning the parental relationship between her former husband and the child born during their marriage. The court, in finding an estoppel, relied on the fact that the appellant had accepted child support payments from her former husband for over three years and had failed to raise the question of paternity in earlier court proceedings. We find that appellee's equitable estoppel argument is premature. In *Young,* the appellant-mother brought an action to terminate the parental rights of the appellee on the grounds that he was the presumptive but not the natural father of her son. The issue of paternity was thus directly before the court. The doctrine of estoppel espoused in *Young* has been applied only in cases where paternity is an issue before the trial court. For example, in the recent case of *Manze v. Manze,* 362 Pa.Super. 153, 523 A.2d 821 (1987), the appellant had filed a petition to terminate his obligation to pay support on the grounds that he was not the father of

the child. This court found that appellant was equitably estopped from denying paternity because he had acknowledged paternity of the child throughout a ten-year marriage and had affirmed his responsibility to support the child by entering into a support order on her behalf. *See also Chrzanowski v. Chrzanowski*, 325 Pa.Super. 298, 306, 472 A.2d 1128, 1131–1132 (1984); *Commonwealth ex rel. Gonzales v. Andreas*, 245 Pa.Super. 307, 369 A.2d 416 (1976). In the case at bar, the trial court was not deciding the issue of paternity. The sole issue was whether there had been any substantial change in the circumstances of the parties to warrant a modification of the existing custody order. As a result, the doctrine of equitable estoppel argued by appellee is not applicable in this case.

For the foregoing reasons, we find no abuse of discretion by the trial court in dismissing appellant's petition to modify custody order on the grounds that appellant has failed to establish a significant change in circumstances. This Court has recognized that by imposing upon a party challenging an existing custody order the initial hurdle of showing changed circumstances, the "doctrine of *res judicata* is adhered to without unduly prejudicing the interest of either parent or child." *Espersen v. Davidow, supra.* In reaching our decision, we emphasize that appellant is in no way precluded from petitioning the trial court to terminate the parental rights of appellee on the grounds that he is the presumptive but not the natural father of L.L.B. *See* Pa.C.S.A. § 2511(a)(3). In his dissenting opinion in *Adoption of Young*, 469 Pa. 141, 154, 364 A.2d 1307, 1314 (1976), Justice Pomeroy recognized that "the provisions of the involuntary termination statute were enacted to protect the children of this Commonwealth." *Id.*, 469 Pa. at 156, 364 A.2d at 1315. Indeed, our legislature has mandated that a "court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). By seeking to end *all* contact between L.L.B. and her presumed natural father, D.B., through a petition to modify an existing custody order, appellant would effectively deprive this minor child

of a "judicial inquiry into whether grounds exist for the judicial involuntary termination of his presumed father's rights as a parent on the ground of non-paternity, and whether or not, in the light of evidence which would otherwise be adduced, it is in the best interests of the child that termination be ordered." *Id.*, 469 Pa. at 155, 364 A.2d at 1315. The best interests of this minor child will be properly addressed and safeguarded in an involuntary termination proceeding, if appellant chooses to bring such an action, because the Adoption Act *mandates* that counsel be appointed to represent children in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. 23 Pa.C.S.A. § 2313(a). *See also In re Adoption of N.A.G.*, 324 Pa.Super. 345, 471 A.2d 871 (1984). This Court has recognized that the purpose of 23 Pa.C.S.A. § 2313(a) is to "guarantee that the needs and welfare of the children would be advanced actively by an advocate whose loyalty was owed exclusively to them." *Id.*, 324 Pa.Superior Ct. at 351, 471 A.2d at 874.

Order affirmed.