548 A.2d 632

**Denise DOLAN**

v.

**Thomas D. DOLAN, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 30, 1988.

Filed Oct. 5, 1988.

James Pappas, Johnstown, for appellant.

Mark A. Gregg, Johnstown, for appellee.

Before CIRILLO, President Judge, and ROWLEY and TAMILIA, JJ.

TAMILIA, Judge:

Appellant-father appeals an Order dated January 12, 1988 denying his petition to modify the custody and visitation Order of July 21, 1986 and refusing to disturb the enrollment of the parties' daughter in Forest Hills School District, Cambria County, Pennsylvania, until further order of the court. The Order also provided there would be no interference with the religious training of the parties' children at Holy Name Church when the father has visitation and custody.

The factual and procedural history surrounding this appeal follows. The parties to this custody action were married in 1980. Two children were born of the marriage, Jessica Marie Dolan, born July 22, 1982, and Thomas Dennis Dolan, born November 26, 1983. On February 28, 1986, the appellant-mother filed a complaint in divorce which included a count seeking custody of the two children. A custody Order .was entered on July 21, 1986, awarding primary custody to the mother and shared legal custody to the father, with the father to have custody essentially on weekends, alternate holidays and two nonconsecutive weeks during the summer. The custody Order also stated, "3. The legal right to make major decisions affecting the best interests of the children including but not limited to medical, religious, and educational decisions, is hereby awarded to both parents." This appears to be an appropriate Order under the Rules of Civil Procedure, ACTIONS FOR CUSTO-

DY, PARTIAL CUSTODY AND VISITATION OF MINOR CHILDREN, Rule 1915.1(b).

A divorce decree was entered on October 2, 1986 and a marriage settlement agreement, dated July 16, 1986, was incorporated by reference into the decree. The agreement, essentially the same as the July 21st Order, provided the parties would have shared legal and physical custody of the children, with the mother to be the principal physical custodial parent. The father was to have the same physical custody as granted in the July 21, 1986 Order. The only substantive difference between the agreement and the Order was the inclusion of Paragraph 3, as specified above, in the Order. Such an inclusion would, of course, supersede the agreement since incorporation into the divorce decree and a petition for a custody Order gave the court the power to modify the terms of the agreement in the best interest of the child. As such, the Order superseded the agreement. At 23 P.S. § 401.1 of the Divorce Code, an amendment, effective February 12, 1988, providing: "(b) A provision of an agreement [whether incorporated or merged into the divorce decree or not] regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances", codifies the power of the court to modify an agreement of the parties, in the best interest of the child, when called upon to do so. While this section was not enacted into law at the time of the original Order, case law existed empowering the court to act. *See Supko v. Monoskey*, 314 Pa.Super. 469, 461 A.2d 253 (1983).

On May 7, 1987, the father filed a *"PETITION TO MODIFY CUSTODY AND VISITATION ORDER"* in which he stated Jessica would be five years old on July 22, 1987 and would begin kindergarten in the fall of 1987.[1] The petition indicated appellant's preference for Jessica's attendance at Holy Name School, a Catholic facility located in

---

1. Although the petition's caption requests modification of the custody and visitation *Order,* the text refers only to the marriage settlement *agreement.* This, of course, does not limit consideration by the trial court or this Court to the agreement, as review will encompass all relevant Orders in terms of their effect.

Ebensberg, several miles from the mother's home, while the mother intended to enroll the child in the public school, Forest Hills School, which was within walking distance of her home. The trial court, by the Order in question, denied the petition to modify. This timely appeal ensued.

Appellant first contends the court failed to examine the best interests of the children since it did not examine the evidence in its Opinion or make any findings in regard to the rationale behind each of the parties' contentions and their reasonableness. Also, he argues that if the court affirmed appellee's decision to enroll the children in Forest Hills School based on the sole fact that she has physical custody during the week, then the court's decision is erroneous. Further, appellant urges the court erred in "reinstating" the July 21, 1986 Order, as he says this Order was modified by the agreement for shared legal custody which was incorporated as part of the divorce decree. As to the last contention, we have already discussed the relationship between agreements and Orders above, and in footnote 1, *supra.*

■ The standard of review under which appellate courts must operate in custody matters is broad; however, we may not reverse the decision of the trial court absent a gross abuse of discretion on the part of that court. *See Snarski v. Krincek,* 372 Pa.Super. 58, 538 A.2d 1348 (1988); *Barclay v. Barclay,* 367 Pa.Super. 529, 533 A.2d 143 (1987). Broad review is necessary to insure the focus of the trial court was on the best interests of the child. *Barclay, supra,* 367 Pa.Superior Ct. at 531, 533 A.2d at 144.

■ In the instant case, a lengthy hearing was held on the issue of whether Jessica's interests would be better served by her attendance at the local public school or the distant parochial school. Both parties testified and were cross-examined, as well as a second grade teacher from Holy Name, the superintendent of Forest Hills School District, a kindergarten teacher from Forest Hills, and a Catholic priest who is familiar with the arrangements Forest Hills parents make for the religious upbringing of their children.

Contrary to appellant's contentions, the testimony of the witnesses revealed the rationale behind the mother's desire for Jessica's mode of education and her reason for deviation from the initial verbal agreement. While the mother did testify on cross-examination that prior to the divorce she had agreed with appellant to send the children to Holy Name in Ebensberg rather than to a different parochial school or public school which would be located closer to the marital residence in Mundys Corner than Holy Name, she explained that she felt the distance from her present home in Sidman to Holy Name was too great for the five-year-old (N.T. 11/15/87, p. 63–4). She expressed her concern that when the mini bus stops in front of their house in Sidman for Holy Name School, nobody is on it; and also, that the mini bus stops in Sidman at 7:25 a.m. and does not arrive at Holy Name until 8:25 a.m., and kindergarten does not begin until 9:00 a.m. (N.T. at 56, 64). As testified by Mr. Afton, Superintendent of Schools, Jessica would be the first on the bus in the morning and the last off the bus in the evening (N.T. at 33). She would be the only child from her community (Sidman) going to Holy Name (N.T. at 4). Also, she would be on the bus for extended mileage (66 miles each day according to objected to testimony (N.T. at 57)). To go to Holy Name she would have to arise at 6:30 a.m. and currently when she gets home, she needs a nap because she is tired, and she needs time with her brother, and the time and travel would cause her day to be long and rushed (N.T. at 58). In contrast, the mother said Jessica does take a bus to Forest Hills, although her home is within three tenths of a mile from the school and she could walk to the school (N.T. at 57). The mother explained her preference for the local school was based on her desire to have the five-year-old's life "a little bit structured right now." *Id.* The close proximity of Forest Hills School permits Jessica the option of walking, and provides her with playgrounds in a safe environment where she can engage in activities with neighborhood children and interact with neighborhood adults, and spend more time with her younger brother (N.T. at 57–62). She stated she wanted "what was best for Jessica" (N.T. at

61). The testimony also bore on the educational opportunities at each school thus presenting the court with many considerations beyond the fact of mother's physical custody. The mother testified about her continuing intent to rear the children in the Catholic faith (N.T. at 59) and a Forest Hills teacher, who also teaches C.C.D. classes, testified that C.C.D. classes were available on Wednesday evenings (N.T. at 46). The mother was reared a Catholic and testified Jessica would be attending Holy Name if she was living in Ebensburg (N.T. at 67). Conversely, the father provided no testimony to rebut the mother's position other than to rely on the original agreement without acknowledging the changed circumstances or the best interest of the child. The focus of the court was clearly on the child's best interests. Our careful review of the record convinces us the mother's decision to place the child in the Forest Hills school was sound, not motivated by any animosity or desire to disturb the custody agreement/order, and the Honorable H. Clifton McWilliams, Jr., President Judge, acted with sound discretion entering the only Order possible under the circumstances of this case.

The desire to have shared legal or physical custody in these cases is the result of the sociological and legal search from time immemorial, to provide a solution which Solomon could not, that is to have two parties alleging an interest in the child to have their way while retaining the wholeness of the child. Shared legal custody works only when the parents agree. Should there be a disagreement, obviously one or the other's, and perhaps neither, view will prevail. In such instances, the court, while looking to the interests and desires of the parties, must ultimately rule in the best interest of the child.

Finding no abuse of discretion, we accordingly affirm the decision of the trial court as being in the child's best interest.

ORDER AFFIRMED.