J-A05031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| T.T.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| P.L.K. | : | No. 1880 EDA 2020 |

Appeal from the Order Entered September 14, 2020
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  No. 0C1500261

BEFORE:     OLSON, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED:  APRIL 29, 2021**

Appellant, T.T.H. ("Father"), files this appeal from the order dated and entered September 14, 2020, in the Philadelphia County Court of Common Pleas, granting in part and denying in part both his and P.L.K.'s ("Mother") petitions for special relief as to ancillary custody issues relating to their minor son, W.K.H. ("Child"), born in March 2009.  After review, we affirm the trial court's order.

The trial court summarized the procedural and factual history as follows:

> Mother and Father entered into a final custody order on September 28, 2016, in which the parties agreed to shared legal custody and shared physical custody of [Child].  The order also contained provisions for custodial rights for vacation, transportation, travel, co-parenting counseling costs, and other matters. Since the entry of the original final order, there have been numerous motions for special relief filed, as a result of which the parties have litigated numerous issues including the selection

---

[*] Former Justice specially assigned to the Superior Court.

of Child's pediatrician and Child's transportation to and from school.

Father filed a motion for special relief on February 14, 2017, regarding, among other things, notice of summer vacation and [Child]'s passport application, previously addressed in Paragraphs 6 and 11 of the September 28, 2016 custody order. Mother and Father entered into an amended final custody order by agreement amending Paragraphs 6 and 11 of the September 28, 2016 order on May 24, 2017.

On June 4, 2018, the court entered another amended final custody order in which it addressed the selection of [Child]'s pediatrician, the selection of the parties' co-parent counselor, execution of written parental consents 72 hours in advance of international travel, and the use of a joint email address for communications regarding [Child] in the event any provider only accepts one email address, among other ancillary issues.

On January 27, 2020, the court entered another order amending the final September 28, 2016 order in which it addressed the selection of Child's school and Father's agreement to provide transportation to and from school.

The cross[-]motions for special relief that are the subject of the instant appeal are similar in nature to the previous motions, that is, they seek modifications to the September 28, 2016 final custody order and are grounded in discrete legal custody issues where the parties were unable to reach agreement. Neither party has filed for a change in the form of physical or legal custody.

On March 6, 2020, Father filed a motion for special relief seeking[:] 1) permission for Child to travel alone as an unaccompanied minor on airplane flights; and 2) for Father to have make-up time when he misses his regular custodial time for his work commitments. No other issues were presented in Father's motion.

On August 13, 2020[,] Mother filed a motion for special relief seeking[:] 1) 30 days' notice of travel involving Child; 2) a change of the co-parent counselor listed in the June 4, 2018 order because that counselor listed is no longer available; 3) ability to enroll Child in therapy; 4) to be provided the contact information for individuals transporting Child to and from school and to require

that such individuals have clear driving records, a background check and child abuse history clearances; 5) that a parenting coordinator be appointed; and 6) that Spring Break be divided equally each year since it is now two weeks instead of one week under the new school calendar. No other issues were presented in Mother's motion.

The court held a full hearing on September 14, 2020, at which Mother appeared with her counsel, Michael Bertin, Esq.[,] and Father appeared [*pro se*].[1] After the presentation of approximately 50 minutes of argument and testimony, the court entered the order in question on the same date.

The September 14, 2020 order denied Father's request for Child to fly as an unaccompanied minor and granted his request for make-up time when he misses his regular custodial time for more than 2 days. The September 14, 2020 order granted Mother's requests for 30 days' notice for travel, substituted a new name for a co-parent counselor, allowed Child to be enrolled in therapy, and appointed a parenting coordinator. The court denied Mother's request to divide Spring Break equally between the parties each year. The court granted Mother's request for the name and contact information of individuals transporting Child to and from school and ChildLine clearances for individuals hired to transport Child to and from school, but denied Mother's request that individuals transporting Child to and from school provide proof of clear driving records and background checks. The court also added a provision regarding communication between the parents that Child should not be included on the parents' communications between each other involving custodial issues and schedules.

On October 7, 2020, Father filed a petition/motion for reconsideration which was denied on October 9, 2020, without a hearing.[2]

_____

[1] We observe that the trial court conducted this hearing virtually.

[2] Notably, Father's motion for reconsideration is not included with the certified record.

- 3 -

On October 14, 2020, [Father] filed the instant, timely notice of appeal.[3] [Father] designated this appeal as "Children's Fast Track," and included his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal as required by [Pa.R.A.P.] 905(a)(2).

Trial Court Opinion, 11/13/20, at 1-3.

On appeal, Father raises the following issues for our review:

1. Did the [t]rial [c]ourt err when it violated Father's due process rights by failing to allow Father the right to present testimony on numerous issues?

2. Did the [t]rial [c]ourt err in failing to properly consider Father's testimony regarding thirty (30) days['] advance[] notice of travel?

3. Did the [t]rial [c]ourt err in failing to properly consider Father's [t]estimony regarding the co-parenting counselor?

4. Did the [t]rial [c]ourt err in assigning a disproportionate amount of costs to Father despite a pending support modification proceeding?

5. Did the [t]rial [c]ourt err in failing to recuse itself due to a conflict of interest?

6. Did the [t]rial [c]ourt err by issuing a highly biased Order based on outright lies from Mother, which the [t]rial [c]ourt failed to hear testimony on?

7. Did the [t]rial [c]ourt err by failing to allow [Child] to travel alone?

8. Did the [t]rial [c]ourt err by failing to hear testimony regarding the transportation of [Child]?

Father's Brief at 3-4 (suggested answers omitted).

---

[3] Father filed the instant appeal *pro se*.

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.

§§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super. 2012) (citation omitted); *see also E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa.Super. 2015) *appeal denied*, 635 Pa. 754, 129 A.3d 521 (2016).

> This Court consistently has held:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.Super. 2004)). In addition,

> [a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a

review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

**M.A.T. v. G.S.T.**, 989 A.2d 11, 18-19 (Pa.Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. **See** 23 Pa.C.S. §§ 5328, 5338. Section 5323 of the Act provides for the following types of awards:

> **(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:
>
> (1) Shared physical custody.
>
> (2) Primary physical custody.
>
> (3) Partial physical custody.
>
> (4) Sole physical custody.
>
> (5) Supervised physical custody.
>
> (6) Shared legal custody.
>
> (7) Sole legal custody.

23 Pa.C.S. § 5323(a).

Section 5328(a) sets forth the best interest factors that the trial court must consider in awarding custody. **See E.D. v. M.P.**, 33 A.3d 73, 79-80 n.2 (Pa.Super. 2011). Specifically, Section 5328(a) of the Act provides as follows:

> **§ 5328. Factors to consider when awarding custody**
>
> **(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant

- 6 -

factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Further, with regard to the Custody Act, we have stated as follows:

. . . "**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). . . . The record must be clear on appeal that the trial court considered all the factors. ***Id***.

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.[] § 5323(d). Additionally, "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.,*** 65 A.3d 946, 955 (Pa.Super. 2013), *appeal denied*, [620 Pa. 727], 70 A.3d 808 (2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.,*** 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons

for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa.Super. 2014).

However, we have clarified that the factors set forth by Section 5328(a) are not required to be addressed where an order merely deals with a discrete and distinct issue. *S.W.D. v. S.A.R.*, 96 A.3d 396 (Pa.Super. 2014).

It is also true that resolution of an otherwise ancillary matter may affect a form of custody and require consideration of the § 5328(a) factors. For instance, the choice of a child's school may factor into a trial court's decision to award a form of custody when the trial court is addressing a request to establish or change legal or physical custody in connection with the choice of school. One parent in a custody dispute may argue that he or she is entitled to primary physical custody because his or her residence has much better schools. On the other hand, many times- like here- these items may appear as independent, discrete issues advanced by motion or petition that does not require a change in the form of custody. Although any decision requires consideration of the child's best interest, only the former situation requires consideration and application of the § 5328(a) factors.

*Id.* at 403; *see also M.O. v. J.T.R.*, 85 A.3d 1058, 1062-63 (Pa.Super. 2014) (stating, "Because the trial court did not make an award of custody, but merely modified a discrete custody-related issue, it was not bound to address the sixteen statutory factors in determining the Children's best interest.")[4]

_____

[4] Instantly, the trial court determined that Father's petition raised only a discrete issue, not requiring examination of the Section 5328(a) custody factors. Trial Court Opinion, 11/13/20, at 5-6. The court stated:

In this case, both Mother and Father filed petitions for special relief asking for the court to address discrete and ancillary issues unrelated to their form of physical custody or substantively changing their form of legal custody. Therefore, though this court

Turning to Father's issues on appeal, with his first issue, Father asserts that the trial court violated his right to due process. Father's Brief at 8. Father points to his inability to elicit and offer testimony. *Id*. Father argues, "Generally speaking, the [t]rial [c]ourt issued its Order without a fully developed factual record because it failed to hear any meaningful testimony from Father in response to Mother's Petition even though Father pointed out numerous inconsistencies and/or outright lies, which the [t]rial [c]ourt entirely subsequently disregarded. This infected every aspect of the [t]rial [c]ourt's Order." *Id*. By way of example, Father refers to and highlights his inability

considered the child's best interests all of the § 5328(a) best interest factors were not specially addressed. The court merely arbitrated a dispute between Mother and Father regarding these issues, instead of granting one of them the right to make that decision. The trial court did not alter the custody regime by allowing either Mother or Father the sole right to make decisions regarding the Child.

"We long have recognized that, when parties share legal custody of a child, they may reach an impasse in making decisions for the child that implicate custody. When that happens, the parties turn to the trial court to decide their impasse. [*See*, *e.g.*, *Staub v. Staub*], 960 A.2d 848 (Pa.Super. 2008) (deciding between public and home schooling); [*Fox v. Garzilli*], 875 A.2d 1104 (Pa.Super. 2005) (ordering that children would attend school in mother's school district); [*Dolan v. Dolan*], 378 Pa. Super. 321, 548 A.2d 632 (1988) (deciding between public and parochial school). This type of court intervention does not affect the form of custody and hence, the 5328(a) best interest factors do not all have to be considered." [*See S.W.D. v. S.A.R.*, 96 A.3d at 405].

*Id*. This was not challenged by either party in the court below or on appeal.

- 10 -

to provide testimony relating to background information regarding those he has transport Child on his behalf and regarding his financial situation.[5] *Id.* at 8-10.

As to due process, we have stated, "A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa.Super. 2018) (quoting *Commonwealth v. Tejada*, 161 A.3d 313 (Pa.Super. 2017)) (internal citation omitted) (emphasis in original).

"Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." *In re J.N.F.*, 887 A.2d 775, 781 (Pa.Super. 2005); *see also Garr v. Peters*, 773 A.2d 183, 191 (Pa.Super. 2001). "Due process is flexible and calls for such procedural protections as the situation demands." *In re Adoption of Dale A., II*, 683 A.2d 297, 300 (Pa.Super. 1996) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)).

However, prior to addressing this issue on the merits, we consider whether such a claim is waived as vague as is argued by Mother and found by the trial court. *See* Mother's Brief at 8; *see also* Trial Court Opinion, 11/13/20, at 7-8.

---

[5] We observe that Father separately raises each of these issues.

Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) requires an appellant in a Children's Fast Track matter to submit a Concise Statement of Errors Complained of on Appeal along with the Notice of Appeal. *See* Pa.R.A.P. 1925(a)(2)(i) (stating, "The concise statement of errors complained of on appeal shall be filed and served with the notice of appeal required by Rule 905. . . .")).

Where a Rule 1925(b) Statement does not sufficiently identify the issues raised on appeal, we have found waiver of all issues on appeal and explained as follows:

> In **Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1999), the Pennsylvania Supreme Court specifically held that "from this date forward, in order to preserve their claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to [Pa.R.A.P.] 1925." **Lord**, 719 A.2d at 309. "Any issues not raised in a 1925(b) statement will be deemed waived." **Id.** This Court explained in **Riley v. Foley**, 783 A.2d 807, 813 (Pa.Super. 2001), that Rule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. This Court has further explained that "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." **Commonwealth v. Dowling**, 778 A.2d 683, 686-87 (Pa.Super. 2001). "Even if the trial court correctly guesses the issues Appellants raise[] on appeal and writes an opinion pursuant to that supposition the issues [are] still waived." **Commonwealth v. Heggins**, 809 A.2d 908, 911 (Pa.Super. 2002).

**Kanter v. Epstein**, 866 A.2d 394, 400 (Pa.Super. 2004), *appeal denied,* 584 Pa. 678, 880 A.2d 1239 (2005), *cert. denied,* **Spector, Gadon & Rosen, P.C. v. Kanter**, 546 U.S. 1092, 126 S.Ct. 1048, 163 L.Ed.2d 858 (2006).

We have further stated:

When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.

In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all. While [**Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1998)] and its progeny have generally involved situations where an appellant completely fails to mention an issue in his Concise Statement, for the reasons set forth above we conclude that **Lord** should also apply to Concise Statements which are so vague as to prevent the court from identifying the issue to be raised on appeal. . . .

**Lineberger v. Wyeth**, 894 A.2d 141, 148 (Pa.Super. 2006) (quoting

**Commonwealth v. Dowling**, 778 A.2d 683, 686-87 (Pa.Super. 2001)).

In finding waiver, the trial court stated:

Regarding the alleged failure of the court to allow testimony on "countless issues," this issue is waived because it lacks the necessary specificity for the court to address it. The vague nature of this allegation of error requires a finding of waiver. [**See In re A.B.**], [63] A.3d 345, 350 (Pa.Super. 2013) (holding that a reviewing court may find waiver where a Rule 1925(b) Statement is too vague).

A statement pursuant to [Pa.R.A.P.] 1925(b) must be sufficiently "concise" and "coherent" such that the trial court judge may be able to identify the issues to be raised on appeal. [**Jricko v. Geico Ins. Co.**], 947 A.2d 206, 2010 (Pa.Super. 2008); [**West-Boqans v. Bogans**], No 1767 MDA 2017 (Pa.Super July 2, 2019) (non-[precedential] decision cited for persuasive value; holding that appellant waived all issues on appeal for circumventing the meaning and purpose of Rule 1925(b) so [as] to preclude judicial review). Nor does Father's [pro se] status [] excuse him from complying with the requirements of Rule

- 13 -

1925(b).  [**See Commonwealth v. Lyons**], 833 A.2d 245, 252 (Pa.Super. 2003); [**Strausbaugh v. Strausbaugh**], No. 209 MDA 2019 (Pa.Super. July 23, 2019) (non-precedential decision cited for persuasive value).

This issue raises no basis upon which to reverse the September 14, 2020 order.

Trial Court Opinion, 11/13/20, at 7-8.[6]

We agree.   For the reasons stated by the trial court, this claim is waived as vague and not sufficiently specific.

With his second issue, Father argues that the trial court erred in requiring thirty days' advance notice of Child's travel.  Father's Brief at 11. Father claims such requirement is "prejudicial" and "particularly egregious." *Id*.  Father points to the necessity of travel on short notice as a result of his business and his agreement to provide as much notice as possible.  *Id.* at 11-12.  Moreover, he asserts that even Mother recognized the unreasonableness of thirty days' notice, thus exposing the punitive nature of said requirement. *Id.* at 12.  Father states:

> Notwithstanding this, in the Order Judge Palmer blanketly required Father to provide 30 days' notice with the **only** exceptions being in case of emergency or funeral.  Judge Palmer's Opinion states that this decision was made "in the best interests of Child to have certainty in his planning for travel, that the lack of notice had been a source of on-going conflict for the parties, and that 30 days' notice is reasonable."  However, such a decision can hardly be in the best interests of the child when both Father

---

[6] To the extent Father noted Mother's history of harassment and his financial circumstances, the court noted they are identified as separate issues and addressed as such, stating, ". . .[T]he merits of these issues will be discussed in the course of addressing them as separately listed in the Rule 1925(b)statement."  Trial Court Opinion, 11/13/20, at 7.

and Mother are in agreement that 30 days' notice is not actually necessary. As a result of this ruling, Child will miss opportunities to travel and have new experiences because of the extremely burdensome notice requirement that neither parent finds necessary in the end.

Respectfully, Judge Palmer's Order goes far beyond the actual desires of Mother and her counsel and is punitive in nature. And while it can certainly be the goal to provide as much notice as humanly possible (whether it be 7, 30, or 60 days), it is simply not feasible to **always** provide 30 days' notice for travel plans given Father's work.

Had the [t]rial [c]ourt permitted Father to provide testimony regarding his detailed work schedule, Father is confident there is no possibility such a result would have occurred. This is particularly the case because outside of the picayune issues raised by Mother, there have been no actual problems with travel notice in the past and there are no actual reasons for this restriction. . . .

*Id.* at 12-14 (emphasis in original) (citation to record omitted) (footnote omitted).

In granting Mother's request for thirty days' advance notice with respect to Child's travel, the trial court reasoned:

This issue is without merit because the court fully considered all testimony presented and ordered the 30-day advance travel notice to effectuate Child's best interest.

The court heard argument from both sides related to this issue and determined it was in the best interests of Child to have certainty in his planning for travel, that the lack of notice had been a source of on-going conflict for the parties, and that 30 days' notice is reasonable. The order of June 4, 2018 required: "The parties shall provide each other with round trip flight information (i.e. all legs of the flights outbound and inbound) at least one week in advance of the initial departure, whenever possible but in all cases in advance. Less than a week's advance notice will be the exception, not the rule." This provision has caused conflicts between the parties. Much of the parties' conflicts seem to be

based in uncertainty regarding travel and not providing proper notice of travel arrangements. The decision to require 30 days' notice was made in consideration of the best interests of Child and the parties' abilities to make plans regarding his life, activities, etc. Furthermore, Father agreed during the hearing, that typically, this would not be an unreasonable amount of time to provide notice of travel. The court properly carved out an exception for funerals or emergencies.

This issue raises no basis upon which to reverse the September 14, 2020 order.

Trial Court Opinion, 11/13/20, at 8-9.

We agree. Significantly, Father agreed to such notice:

THE COURT: -- well it would be a binding term, because it will be in a [c]ourt order. So[,] you'd have to give 30 days' notice.

[FATHER]: Yeah. I agree.

. . .

[FATHER]: I mean I can agree to 30 if you want, but I would like to speak to the traveling issue if possible.

THE COURT: Well[,] we're really low on time here.

[FATHER]: Okay.

THE COURT: So[,] if you're okay with 30 days[,] we're going to move on to something you're not okay with. Okay?

[FATHER]: Okay.

. . .

N.T. 9/14/20, at 38-39. Despite any potential qualification or equivocation, *i.e.* "if possible," Father ultimately offered his consent, as indicated. ***Id***. Given Father's agreement, this issue therefore has no merit.

To the extent that Father argues that such notice was unreasonable and neither he nor Mother desired such notice or found such notice necessary, this

is not supported by the record. *Id.* at 38-40. Further, and more importantly, any objections should have been raised at the time of trial and are now untimely. Thus, we would also find this issue waived. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); *see also Fillmore v. Hill*, 665 A.2d 514, 515-16 (Pa.Super. 1995) (stating, "[I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error, such as an erroneous jury instruction, will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.") (citations omitted); *see also Bednarek v. Velazquez*, 830 A.2d 1267, 1270 (Pa.Super. 2003).

Next, with his third issue, Father challenges the trial court's order as to Ruth Conviser as a co-parent counselor. Father's Brief at 14. Father argues that Ms. Conviser was biased given her refusal to communicate with him via his email address and communication with Mother via an email that he did not have access to. *Id.* at 15. Father states, "Given Ms. Conviser's obvious bias toward Mother, it was absurd to require Father to agree to her as a co-parent counselor and be forced to pay for 90% of the costs, particularly because he has provided suitable alternatives in the past, which the [t]rial [c]ourt refused to actually hear testimony on." *Id*. He continues,

In short, the [t]rial [c]ourt fully disregarded Father's valid, demonstrable concerns about Ruth Conviser's impartiality and never even let Father get to the point where he could substantively discuss the alternatives he found. [*See*] Appendix B at 9 (Judge Palmer's Opinion noting that "Father had ample opportunity to provide the court with the name of an alternative counselor to Ms. Conviser" is clearly at odds with the hearing transcript).

*Id.* at 16-17.

Further, Father maintains that he was unable to pay the amount apportioned[7] and that Mother refused to consider any past proposals he has made. *Id.* at 17.

Additionally[,] (and[,] more importantly[,] in light of Ms. Conviser's unavailability), Father is not in a position to pay for a disproportionate amount for co-parenting sessions. He has lost a significant portion of income and is facing bankruptcy (facts the [t]rial [c]ourt failed to even consider). Further, Mother has refused to even consider co-parent counselors that Father has proposed, which are conveniently located near Father's work (further facts that the [t]rial [c]ourt failed to consider). Finally, the previous [t]rial [c]ourt-ordered custody evaluation makes clear that Mother has been blocking progress on this issue, not Father. Accordingly, the [t]rial [c]ourt's one-sided Order in this regard was issued in error.

*Id.* (footnote omitted).

In support of its provision as to co-parent counseling, the trial court stated:

Father argues that he "is strongly opposed to Ruth Conviser because, among other reasons, in the past Ms. Conviser refused to communicate with Father via Father's email address and communicated with Mother via an email that Father never checked and, in fact, did not even know the password to." He argues that

---

[7] We note that the apportionment of costs was raised by Father as a separate issue and is addressed by Father and the trial court as a separate issue.

- 18 -

Ms. Conviser has an "obvious bias toward Mother," and that he had provided suitable alternatives to her in the past, about which the [c]ourt refused to hear testimony.

Father's argument is not supported by the record. The exchange between the court and Father establishes that he had ample opportunity to provide the court with the name of an alternative counselor to Ms. Conviser, but that he failed to do so. The court moved on with testimony when Father failed to provide a counter-proposal despite being asked numerous times if he had another proposal. Further, the court determined that the allegations of bias of Ms. Conviser were not sufficiently proven.

This issue raises no basis upon which to reverse the September 14, 2020 order.

Trial Court Opinion, 11/13/20, at 9.

We agree. We discern no abuse of discretion. For the reasons noted by the trial court, this issue is without merit.

With his fourth issue, Father asserts that the trial court erred in its apportionment of costs. Father's Brief at 18. He states that he "is in no position to financially afford the disproportionate 90/10 split of the costs assigned to him in the Order." *Id*. Particularly, Father notes that there was a pending support modification and that he attempted to raise his financial difficulties. *Id*. As such, Father maintains that the apportionment of costs was "unconscionable." *Id*.

In support of its apportionment of costs, the trial court reasoned:

This issue is without merit because it was not raised during the hearing and is therefore waived. Issues may not be raised for the first time on appeal. [Pa.R.A.P.] 302; [**Willoughby v. Willoughby**], 862 A.2d 654, 659 (Pa.Super. 2004). The child support issue raised by Father here in this appeal was not before the court in this motion hearing. The order by agreement of the parties of September 28, 2016, at Number 12 proportions the

- 19 -

costs for co-parent counseling with 90% to Father and 10% to Mother. Father never filed a petition for modification of the final order of September 28, 2016 seeking to change the percentage of cost proportions based upon a change in circumstances.

Further, there were several instances when Father raise [sic] his financial circumstances to the attention of the court. The court adequately considered Father's financial situation based on the testimony. While Father stated he is now in bankruptcy, he also provided conflicting information of his finances such as his ownership of multiple businesses, his need to fly all over the country related to these enterprises, his family summer home in Oregon where he owns a brewery, and his planned two-week trip to Greece over Child's Spring Break in 2021. These lifestyle choices are not indicative of financial struggle to the point of being unable to pay for his share of court-ordered co-parent counseling, counseling for the child, or the parent coordinator. Vacation and summer travel should not take precedence over the emotional and psychological wellbeing of the child. It is in the child's best interests for his parents to find ways to reduce their conflicts with one another. Co-parent counseling and parenting coordination is one way to reduce conflicts and litigation and resolve some issues by agreement.

This issue raises no basis upon which to reverse the September 14, 2020 order.

Trial Court Opinion, 11/13/20, at 9-10.

Pennsylvania Rule of Appellate Procedure 302(a) provides for the waiver of issues not first raised in the lower court ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.") **See** Pa.R.A.P. 302(a); **see also Fillmore**, 665 A.2d at, 515-16; **see also Bednarek**, 830 A.2d at 1270. Instantly, Father failed to specifically raise any objection in the court below related to the apportionment of costs.

[COUNSEL FOR MOTHER]: . . .[W]e would ask that we actually have the specific person in there so we can get [co-parent counseling] going after four years. We also have a request for the child to be in counseling. And so[,] the good news is that [Father]

- 20 -

and his response that he filed on Friday agrees. He doesn't -- he no-- he said he would agree to the child attending counseling. We'd like it to be consistent with the prior orders of a 90 percent, 10 percent split. I believe that Dad --

[FATHER]: I don't agree. I don't think that -- I'm sorry to interrupt, but I didn't agree to saying counseling. I said I wasn't opposed to counseling as an idea. . . .

N.T., 9/14/20, at 21-22. As reflected, Father failed to raise an opposition to the apportionment of costs. As such, as Father failed to raise the issue in the court below, it is waived. Moreover, even if not waived due to Father's separate reference to financial difficulties, we agree with and adopt the analysis provided by the trial court.

Next, with his fifth issue, Father argues that the trial court erred in failing to recuse itself due to a conflict of interest. Father's Brief at 19. Father notes that the trial court judge disclosed a conflict with counsel for Mother's law firm and made its own determination of independence. *Id.* He argues however that the judge "did not provide any details concerning the nature of that prior representation including when it occurred, how long it lasted, and so on.

Further, the trial court judge never asked Father or counsel for Mother if they consented or had any questions. . . ." *Id*. As a result, Father contends that the trial court was biased. He states, "Appellant respectfully submits that the [t]rial [c]ourt's previous relationship with counsel for Mother and subsequent bias inhibited the [t]rial [c]ourt's ability to deliver a fair, and unbiased order, as evidenced by the lack of testimony it heard from Father on

- 21 -

some of the most basic and important topics and its resulting, entirely one-sided, Order." *Id.* at 20-21.

On this issue, the trial court stated:

Father states that "[t]he court disclosed a conflict of interest from the outset and made a determination itself that it was independent." This is a misstatement of the fact that the presiding judge advised the parties and counsel at the commencement of proceedings that she had been personally represented by the law firm (Obermayer) with which Mother's counsel is associated. The trial judge affirmatively stated that there was no previous relationship with Mother's counsel, Mr. Bertin. The disclosed relationship was with the law firm Obermayer Rebmann Maxwell & Hippel LLP.

This issue is waived because Father did not object to the presiding judge continuing with the hearing after the judge made the disclosure of being represented in an unrelated matter by the Obermayer firm. Father could have made an objection at that time, prior to presenting his case. Instead, Father continued with the hearing and in fact, presented his position to the court first and prior to any presentation by Mr. Bertin. [**See Bednarek v. Velasquez**], 830 A.2d 1267, 1270 (Pa.Super. 2003) (holding that acquiescence to a procedure employed by the trial court results in waiver of any challenge to that procedure on appeal).

Father cites as "evidence [of] a bias toward Mother and her counsel that cannot be ignored," the portion of the order which directed Father not to discuss the custody proceedings with Child. . . .

As is clear from a reading of the order, both Father and Mother are ordered to address any and all custody issues directly between themselves and/or in co-parenting counseling and/or in parenting coordination. That portion of the order precludes both parties from addressing the custody proceedings in ways other than the ones listed and does not include Child. The directive regarding Father specifically was in response to Father's admission during the proceeding that he copied the child on his correspondence and texts to Mother about the custody issues and schedule.

This issue raises no basis upon which to reverse the September 14, 2020 order.

Trial Court Opinion, 11/13/20, at 10-12.

We agree. Again, Pennsylvania Rule of Appellate Procedure 302(a) provides for the waiver of issues not first raised in the lower court ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). **See** Pa.R.A.P. 302(a); **see also Fillmore**, 665 A.2d at 515-16; **see also Bednarek v. Velazquez**, 830 A.2d 1267, 1270 (Pa.Super. 2003). Instantly, Father failed to raise any issue of recusal or objection to the trial judge proceeding with the hearing when she revealed prior representation by counsel for Mother's law firm. This issue is therefore waived.

With his sixth issue, Father challenges the order as biased and based on untruths which the court failed to allow Father to refute. Father's Brief at 21. Father states that "the nexus of allegations that led to this ruling by the [t]rial [c]ourt were complete exaggerations and/or outright lies, as Father attempted to testify to (albeit unsuccessfully)." **Id.** at 21. Specifically, Father refers to the court's provisions prohibiting him from including Child in communications with Mother. **Id.** at 21-22.

The trial court reasoned:

> Father argues that "the nexus of allegations that lead to this ruling by the court were complete exaggerations and/or outright lies, as Father attempted to testify to (albeit unsuccessfully)."
>
> This does not raise an issue of an error of law or abuse of discretion. Rather, Father simply makes a bald allegation of bias. It is repetitive of Issue No. 5. See above.

. . .

The fact that the court granted a number of Mother's requests such as her request for 30[-]days[] notice for travel, substituting a new name for a co-parent counselor, allowing Child to be enrolled in therapy, and appointing a parenting coordinator does not mean it was highly biased. All decisions made in the order of September 14, 2020 were based entirely in the best interests of the [c]hild standard after weighing the evidence and arguments before the court.

The directive on Father's communications including Child were based on Father's own testimony and admission that he had included Child on communications with Mother about custodial issues and schedules. In consideration of the best interests of the child standard, shielding [] Child from his parent's conflict is paramount in highly litigious cases such as this one. Hearing that Child was essentially cc'ed on Father's correspondence to Mother about custodial issues raised grave concern for the court of [] Child's emotional well-being and was the basis for the new additional term in the order.

This issue raises no basis upon which to reverse the September 14, 2020 order.

Trial Court Opinion, 11/13/20, at 12-13.

We agree. We emphasize that Father specifically admitted that he included Child in communication with Mother. N.T., 9/14/20, at 49-51 (stating, ". . .I mean I -- the circumstance was the only way to do it. She was with him." *Id.* at 50.). Hence, as we discern no abuse of discretion, this claim in without merit.

With his seventh issue, Father contends that the trial court erred in denying request for Child's unaccompanied travel. Father's Brief at 23-24. Father argues, "In the Order, the [t]rial [c]ourt erred in denying Father's request that [Child] be permitted to travel alone. [Child] is an experienced

- 24 -

traveler, his stepsiblings all travel alone, and he has expressed a desire to be permitted to travel alone many times in the past." *Id.* at 23-24. Father asserts that allowing Child to travel as an unaccompanied minor was in his best interests. *Id.* at 24. Father argues, "Here[,] it is unquestionably in [Child]'s best interests to permit him to travel alone. This would allow for additional scheduling flexibility for everyone involved and significantly reduce the overall travel expenses and stress on the parties, in addition to being something that [Child] very much desires." *Id*.

In denying Father's request for Child to travel as an unaccompanied minor, the trial court stated:

> Courts routinely decide issues such as whether a child may travel alone as an unaccompanied minor. In making such decisions, a court is entitled to reach inferences from the evidence presented utilizing common sense. [*See T.D. v. E.D.*], 194 A.3d 1119, 1130 (Pa.Super. 2018). ("The court had a duty to assess whether allowing A.D. to fly as an unaccompanied minor would be in his best interest. In so doing, the court need not ignore concerns about safety and common-sense dangers associated with a minor traveling alone. Based on the evidence presented, the court found no compelling reasons to modify the current custody Order. In hearing the testimony, the court made a factual determination and drew reasonable inferences from the evidence, and no abuse of discretion occurred.").
>
> Here, Father sought for W.K.H., an 11-year old [c]hild, to fly as an unaccompanied minor against Mother's expressed wishes and concerns. This is an issue of legal custody where the parties have failed to reach an agreement on what is in the best interests of their son. In this case, Father and Mother both live in Philadelphia and the travel Father is seeking involves vacation, leisure and travel to Father's summer home in Oregon. Father testified that the cross-country flight to Oregon and travel to a remote summer home annually is not convenient for him to personally accompany the [c]hild due to the length of the flight

and Father's own health issues. Father's concerns raised in the hearing are grounded in his own inconvenience rather than Child's safety.

Mother expressed that the child is not mature enough to fly alone and that he is shy and reserved and may not feel comfortable advocating for his own needs on such a long trip. A flight of this length (8 hours) would involve the child needing to purchase or obtain meals on his own and use the restroom multiple times in the airport and on the plane. It would also involve navigating the airport alone for two hours prior to the flight. It could even involve the typical issues that occur in air travel such as delayed flights, rerouted flights, changing planes, etc. Therefore, the court found that it is not in the best interests of the 11-year-old [c]hild to fly cross country as an unaccompanied minor at this time in consideration of his age and maturity level. Further, in light of the [COVID]-19 Pandemic, any leisure and unnecessary air travel at this time is not in the best interests of the [c]hild. While Father stated this request was for in the future[,] when it was safer to travel by air, the court determined that due to all the many risks involved, the parties together should agree upon this issue. Furthermore, the court directed the parties to address this issue in co-parent counseling to determine an agreed-upon age when traveling as an unaccompanied minor would be appropriate for their son.

This issue raises no basis upon which to reverse the September 14, 2020 order.

Trial Court Opinion, 11/13/20, at 13-14. We discern no abuse of discretion.

As such, for the reasons stated by the trial court, this issue is meritless.

Lastly, with his eighth issue, Father argues that the trial court erred in requiring Father to provide information as to those transporting Child to and from school, including ChildLine clearances. Father's Brief at 24. Father indicates that he only utilized those who were employed by him and had passed a background check to transport Child on his behalf. *Id.* at 24-25. He then challenges that he was unable to present testimony as to Mother's past

history of "inappropriate communications" with his employees. *Id.* at 25. Father further asserts that the trial court ordering as such demonstrated its "inherent bias" against Father as it failed to require same of Mother. *Id.* at 25-26.

As to the requirements for those who Father has transport Child to and from school, the trial court reasoned:

> Father argues that, "the court allowed zero testimony or factual information from the Father" on the issue of "requiring Father to provide a current ChildLine clearance for anyone that Father "hires" to pick up [Child]."
>
> This issue does not raise an abuse of discretion or error of law, but rather misstates the facts of the case. The court heard testimony from both sides related to this issue. Father seems to wish to re-litigate an issue raised in prior proceedings, that Mother harassed his employees.
>
> The greatest concern for this court in custody cases is the best interests of the child. Safety is always paramount in determining what is in the best interests of a child. Hearing that Father has hired individuals to transport the child, it is in Child's best interest to ensure that at very minimum, such individuals have not been found to be convicted of child abuse. ChildLine clearances are free and easily accessible online. Such clearances are required for individuals who work directly with minor children such as teachers, bus drivers, coaches, and volunteers in schools or volunteers in extracurricular activities. Having such clearances mandated for individuals transporting Child, who may be alone with Child in a vehicle, is in his best interests. This [c]hild's safety outweighs the minor inconvenience to Father in having his hired driver obtain a free online ChildLine Clearance.
>
> This issue raises no basis upon which to reverse the September 14, 2020 order.

Trial Court Opinion, 11/13/20, at 14-15.

- 27 -

We agree. We further note with respect to Father's argument of bias as this provision was only applicable to Father and not Mother that Father, not Mother, was the party responsible for Child's transportation to and from school. As such, as we discern no abuse of discretion, this claim is without merit.

For the foregoing reasons, the trial court's order is affirmed.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/21