## Toni J. STAUB, Appellee

v.

## Brian L. STAUB, Appellant.

Superior Court of Pennsylvania.

Argued April 29, 2008.

Filed Oct. 21, 2008.

---

Arthur J. Becker, Jr., Hanover, for appellant.

Kathleen J. Prendergast, York, for appellee.

BEFORE: LALLY–GREEN, SHOGAN and COLVILLE *, JJ.

OPINION BY SHOGAN, J.:

¶ 1 Appellant ("Father"), Brian L. Staub, appeals from the order denying his petition for special relief brought pursuant to Pa.R.C.P.1915.13.[1] Therein, Father requested that the trial court prevent continued home schooling of the parties' minor children by Appellee ("Mother"), Toni J. Staub. On appeal, Father asks us, *inter alia*, to adopt a clear but narrow rule that requires children to attend public schools when parents who share legal custody cannot agree on home schooling versus public schooling. We decline to adopt such a rule or presumption. To the contrary, we hold that the well-established best interests standard, applied on a case by case basis, governs a court's decision regarding public schooling versus home schooling. Utilizing this standard, we affirm the trial court's order.

---

* Retired Senior Judge assigned to the Superior Court.

1. Pa.R.C.P.1915.13 states, in pertinent part, that "[a]t any time after commencement of [a custody, partial custody or visitation of minor children] action, the court may on application or its own motion grant appropriate special relief."

¶ 2 The trial court summarized the facts of this case as follows:

The parties separated residences in June of 2007. Mother lives in the Southwestern York School District. Father also resides in that school district. The children are aged 10 and 13. They have been home schooled since September of 2001. The oldest child attended a private school for pre-school, kindergarten and first grade. The youngest child has always been home schooled ...

Mother, who has only a high school education, has always and continues to be the person responsible for the home school program. The decision to home school the children was made by both parents. Father, as the "breadwinner" of the family, has been relatively uninvolved in the home school program by his choice, according to his testimony. He discussed with Mother the possibility of public schooling for the children little, if at all, but instead suggested alternatives such as private or charter schools.

By all accounts, the children are doing well academically. The home school program is supervised by a representative of the Southwestern School District. The children are involved in activities outside of academics, though not necessarily through the school district. Extracurricular activities are available to the children through the school district. There is no evidence that Father is excluded from participation in the schooling process by Mother.

Trial Court Opinion, 8/28/07, at 2.

¶ 3 We note that a Stipulated Order for Custody had been entered by the trial court shortly after Mother vacated the marital residence. Pursuant to that order, Mother and Father were granted shared legal custody and Mother was granted primary physical custody. See Stipulated Order for Custody, 7/9/07, at 1–2. The shared legal custody was defined as "the right of both parents to control and to share in making decisions of importance in the life of their children, including educational, medical, and religious decisions." *Id.* at 2. As noted in the July 9, 2007 order, Mother and Father had reached agreement as to all custody issues, except whether the children should attend public school in the fall or be home schooled. *Id.* at 1.

¶ 4 Mother and Father were apparently unable to come to an agreement on the education issue and, on July 30, 2007, Father filed the instant petition for special relief pursuant to Pa.R.C.P.1915.13. On August 21, 2007, the trial court held a hearing on Father's petition for special relief. On August 24, 2007, the trial court issued the instant order denying Father's petition for special relief. This appeal followed.

¶ 5 Father raises the following issues on appeal:

1. Whether the Trial Court erred in adopting a "case by case" approach to determining [sic] whether children should attend public school or home school?

2. If the Trial Court was correct in adopting a "case by case" approach to determining [sic] whether children should attend public school or home school, whether the Trial Court erred in finding that this case presents "extraordinary circumstances" which require a deviation from the well-established policy of public school education?

Father's Brief at 5.

¶ 6 Father presents a custody issue of first impression for this Court. In his interrelated issues, Father asks us to adopt a bright line rule in favor of public schooling over home schooling, instead of

utilizing the best interests standard to decide this educational issue on a case by case basis.

¶ 7 This Court's scope and standard of review is well settled in reviewing a custody order:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*A.J.B. v. M.P.B.*, 945 A.2d 744, 746 (Pa.Super.2008) (citing *Helsel v. Puricelli,* 927 A.2d 252, 254–255 (Pa.Super.2007)).

¶ 8 In his first issue, Father contends that the trial court "erred in adopting a 'case by case' approach to determining [sic] whether children should attend public school or home school." Father's Brief at 5. When resolving disputes concerning home schooling, Father specifically urges this Court to "establish a clear but narrow rule that requires children to attend public school. . . ." *Id.* at 7. Father advances several arguments in favor of the adoption of a clear but narrow rule. First, he argues that allowing one parent to home school the children over the objection of the other parent excludes the objecting parent from the children's education. *Id.* at 7, 11. Second, he argues that parents who cannot communicate with each other must continually resort to judicial intervention in order to resolve disputes over the children's education. *Id.* at 7, 11–12. Finally, he argues that a clear but narrow rule does not prevent a court from withdrawing shared custody if one parent is acting in bad faith. *Id.* at 7–8, 12–13.

¶ 9 In addressing Father's first argument, we note that, according to Father's own testimony, he has been relatively uninvolved in the home school program by choice. N.T., 8/21/07, at 107. Moreover, there is no evidence that Mother excluded Father from participating in the schooling process. Thus, Father's first argument lacks merit.

¶ 10 Father's second argument in favor of a bright line rule is that if the parties cannot agree, "the objecting parent must resort to continuous judicial intervention to resolve disputes involving the home schooling of the children." Father's Brief at 11–12. However, in shared custody cases, we have previously stated that we are "neither unaware of nor unconcerned with the fact that granting shared custody involves an inherent risk that couples may reappear on the courthouse steps for further resolution of their conflicts." *Hill v. Hill,* 422 Pa.Super. 533, 619 A.2d 1086, 1088 (1993). Despite that concern, this Court has determined that the benefits of shared decision-making authority outweigh the concern for judicial expediency. *See In re Wesley, J.K,* 299 Pa.Super. 504, 445 A.2d 1243 (1982). Consistent with this authority, the benefits afforded parents in shared decision-making over education choices outweigh any such concerns. Thus, Father's second argument lacks merit.

¶ 11 We likewise fail to find merit in Father's third argument in favor of a bright line rule since, regardless of whether a bright line rule is adopted, a court may revisit its custody determinations in cases of bad faith.

¶ 12 Finally, we note that Father has neither provided us with any evidence that a public education is in the best interests of the child in every case, nor has he pointed to any precedent or legislative enactment that supports such an argument. Moreover, Father's arguments do not focus on the best interests of his children or children generally. Instead, they focus on the best interests of the parent objecting to home schooling, who in this case is the father.

¶ 13 Despite Father's failure to provide any precedent or legislative support for his request that we adopt a bright line rule, we will nonetheless respond more specifically to the merits of his request in order to provide guidance to the trial courts and bar in general. Historically, we note that in 1682, the "Great Law" passed by the First General Assembly of Pennsylvania "included a provision for the creation of schools across Pennsylvania." *Combs v. Homer Center School District,* 468 F.Supp.2d 738, 742 (W.D.Pa.2006), *affirmed in part, vacated in part, remanded by, Combs v. Homer–Center School District,* 540 F.3d 231 (3d. Cir.2008). In addition, Article III § 14 of the Pennsylvania Constitution requires the General Assembly to provide a system of public education to serve the needs of the Commonwealth. "The Constitution of Pennsylvania … not only recognizes that the cause of education is one of the distinct obligations of the state, but makes of it an indispensable governmental function." *Zager v. Chester Community Charter School,* 594 Pa. 166, 173, 934 A.2d 1227, 1231 (2007) (quoting *Malone v. Hayden,* 329 Pa. 213, 223, 197 A. 344, 352 (1938)).

¶ 14 The original school education system of this Commonwealth has evolved since enactment of the Great Law in 1682. Pursuant to the Public School Code of 1949 ("the Code"),[2] the Pennsylvania General Assembly currently permits parents to choose among four general categories of education to satisfy the compulsory attendance requirement of the Code: (1) a public school with certain trade, or business school, options; (2) an accredited private academic school, or private tutoring; (3) a day school operated by a "bona fide church or other religious body;" or (4) a "home education program." 24 P.S. §§ 13–1327, 13–1327.1. *See also Combs,* 540 F.3d at 235.

¶ 15 In 1988, the Pennsylvania legislature approved a comprehensive program of home schooling which conformed with the requirements of the Code. In Pennsylvania, "[a] home education program must satisfy the same minimum hours of instruction requirements and almost all of the same subject matter requirements as a school operated by a bona fide church or religious body." *Combs,* 540 F.3d at 237 (citing 24 P.S. §§ 13–1327(b), 13–1327.1(c)).

¶ 16 While changing to allow for a more flexible education system, the provisions of the Code suggest neutrality on the issue of whether public, home, or other permitted schooling, is preferable. Section 13–1327, "Compulsory School Attendance," states that:

(a) Except as hereinafter provided, every child of compulsory school age having a legal residence in this Commonwealth, as provided in this article, and every migratory child of compulsory school age, is required to attend a day school in which the subjects and activities prescribed by the standards of the State Board of Education are taught in the English language …

---

**2.** Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101 to 27–2702.

* * *

(d) Instruction to children of compulsory school age provided in a home education program, as provided for in section 1327.1 of this act, shall be considered as complying with the provisions of this section . . .

24 P.S. § 13–1327(a), (d) (footnote omitted). Section 13–1327.1 of the Code, "Home education program," sets forth the procedures for ensuring that an appropriate education is taking place in the home schooling program. If, for some reason, it is determined that a child is not receiving an appropriate education, "the home education program for the child shall be out of compliance with the requirements of [sections 1327.1 and] 1327, and the [child] shall be promptly enrolled in the public school district of residence or a nonpublic school or a licensed private academic school." 24 P.S. § 13–1327.1(j), (*l*). Thus, the plain language of these provisions suggests that if a home education program is in compliance with section 13–1327.1, it is on equal footing with that of a public education. 24 P.S. § 13–1327(d). Certainly, nothing in the provisions of the Code indicates a preference for one system over the other. If anything, there is a strong argument that the Code defers to the parents on this issue. The Code, in 24 P.S. § 13–1327(b)(2), specifically states that "[i]t is the policy of the Commonwealth to preserve the primary right and the obligation of the parent or parents, or person or persons in loco parentis to a child, to choose the education and training for [a child enrolled in a day school which is operated by a bona fide church or other religious body]."

■ ¶ 17 In light of the above, we decline to adopt a bright line rule or presumption in favor of public schooling over home schooling. Thus, we conclude that the trial court did not err in utilizing a "case by case" approach to this educational issue.

¶ 18 In his second issue, Father alternatively contends that the trial court erred "in finding that this case presents 'extraordinary circumstances' which require a deviation from the well-established policy of public school education[.]" Father's Brief at 5. Here, the trial court concluded that "absent extraordinary circumstances, when two parents sharing legal custody of a child cannot agree whether the child should be home schooled or attend public school, it is usually in the child's best interests to attend public school." Trial Court Opinion, 8/27/07, at 7–8. The trial court then proceeded to find "extraordinary circumstances" and denied Father's petition. *Id.* Based on the foregoing, we disagree with the trial court's conclusion regarding a presumption in favor of public schooling and the need to find extraordinary circumstances to overcome the presumption. However, notwithstanding the trial court's stated grounds, if its result is correct, this Court can affirm the trial court on any basis. *Oxford Presbyterian Church v. Weil–McLain Co., Inc.*, 815 A.2d 1094, 1102 n. 3 (Pa.Super.2003).

■ ¶ 19 It is well-established that "the paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being and is to be made on a case-by-case basis." *A.J.B.*, 945 A.2d at 747 (citing *Wheeler v. Mazur*, 793 A.2d 929, 933 (Pa.Super.2002)). *See also Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa.Super.2006) ("custody disputes are delicate issues that must be handled on a case by case basis.")

¶ 20 In *Dolan v. Dolan*, 378 Pa.Super. 321, 548 A.2d 632 (1988), the best interests standard was applied on facts similar to those of the instant case. In *Dolan*, the

father filed a petition to modify the custody and visitation order to require his child's enrollment at a parochial school instead of a nearby public school. *Id.* at 633–634. On appeal, we stated that:

Shared legal custody works only when the parents agree. Should there be a disagreement, obviously one or the other's, and perhaps neither, view will prevail. In such instances, the court, while looking to the interests and desires of the parties, must ultimately rule in the best interest of the child.

*Id.* at 635. Concluding that the trial court did not abuse its discretion, we affirmed the trial court's decision on the grounds that it was in the best interests of the child to do so. *Id.*

■ ¶ 21 Like in *Dolan,* here, the parties to a shared legal custody arrangement simply disagree over where their children should be educated. We find no reason to believe that a disagreement between public and parochial schooling is any different than a disagreement between public and home schooling. Therefore, we apply the well-established best interests standard to resolve this educational issue.

■ ¶ 22 Regarding the best interests of the children, Father argues that "[a]lthough the parties did agree that home schooling was best for their children for the first several years of their grade school education, . . . their advanced education should be taught by qualified professionals rather than Appellee." *Id.* at 14.

¶ 23 The trial court held a lengthy hearing on the issue of whether the children's best interests would be better served by attending public school or home school. Both Mother and Father testified and were cross-examined, and multiple witnesses testified on behalf of each parent. Additionally, during the hearing, the parties provided a joint stipulation of facts to the trial court. N.T., 8/21/07, at 5–6. Therein, it was established that: the children have been home schooled by Mother since September 2001; the older child attended a private school for pre-school, kindergarten and first grade; the younger child has always been home schooled; and, neither child has ever attended public school. *See* Joint Stipulation of Facts.

¶ 24 Father stated that he felt that the social development of the children would be better served if they were "exposed to all of the different personalities, all the different character traits, all the different behavior patterns of a lot of children" and they would have the opportunity to do so by attending public school. N.T., 8/21/07, at 33. Additionally, Father testified that Mother only had a high school education, and that the resources and the certified teachers that the public school offers cannot be duplicated in a home school environment. *Id.* at 32, 42. On cross-examination, Father testified that he does not get to see his children interact with other children or adults. *Id.* at 96. Additionally, when asked what the extent of his involvement was in the children's education, Father responded that "I told my wife from the start that I was the breadwinner of the family and I would not have the time to be helping out with the homeschooling, and I was very clear on that." *Id.* at 107.

¶ 25 Mother testified that she chose to enroll her children in a science class outside the household because she felt that the children would benefit more from being instructed by a teacher who is much more passionate about the subject. N.T., 8/21/07, at 121. Additionally, she testified she felt that it was in her children's best interests to continue with her home education program in light of the findings of her home schooling expert, Dr. Brian Ray. *Id.* at 119.

¶ 26 Dr. Ray, who, among other things, has reviewed thousands and thousands of home schooled children's standardized test scores and portfolios over a 23–year period, testified that the children are "very high in the terms of their academic achievement." N.T., 8/21/07, at 55. Specifically, regarding the children's test scores, Dr. Ray testified that "[the children] are not only above average, but above average of the home-school average, which is above the public school average." *Id.* Regarding their portfolios, Dr. Ray testified that "all [of] the basic subject areas are being addressed carefully and in detail, and in addition, they're engaged in all kinds of activities beyond the, quote, basics of a public school or even a private school environment. They're doing very, very well." *Id.* at 58–59. With respect to the children's social abilities, Dr. Ray testified that they had absolutely no trouble interacting with other children or adults. *Id.* at 68–70. Further, Dr. Ray testified that nothing indicated that the children would be better off by taking them out of their home education program and enrolling them in public school. *Id.* at 72–73. Finally, Dr. Ray testified that, in the home school context, "[c]hildren of parents who have higher education attainment score a little higher, but the correlation is ... quite weak." N.T., 8/21/07, at 62.

¶ 27 South Western School District superintendent, Barbara Kehr, also testified in the hearing. N.T., 8/21/07, at 82. Kehr is in charge of ensuring that the home education programs in the district are in compliance with requirements of the Code.[3] *Id.* at 85–86. Specifically, Kehr approves parents' requests to home school their children and, if approved, she reviews the children's portfolios at the end of the school year. *Id.* In her testimony, Kehr reinforced Dr. Ray's statements regarding the children's academic achievements. Specifically, Kehr stated that:

> [the children are] above average in most categories and highly above average in a lot of them compared to other students across the country who take that achievement test.
>
> As far as the portfolios themselves go, whenever I look at one, I always try to see, if this child were to enter South Western tomorrow, would the child be about where he or she needs to be in order to be successful.
>
> In judging the portfolios of the Staub children, both of them appear to be at a place where they would be on par with their public-schooled counterparts.

*Id.* at 87. Additionally, when asked whether South Western's middle school would be able to provide the children with anything additional to that which they are receiving in their home education, Kehr stated that it would just be "a different form of delivery." Id. at 88.

¶ 28 It is apparent that the trial court was aware of Father's argument that Mother's high school education is insufficient and did not find it to be a significant

---

**3.** The superintendent of the public school district of the child's residence is charged with ensuring that each child is receiving "appropriate education," which is defined by the Code as "a program consisting of instruction in the required subjects for the time required in this act and in which the student demonstrates sustained progress in the overall program." 24 P.S. § 13–1327.1(a). In order to demonstrate to the superintendent that such "appropriate education" is taking place, at the end of each public school year the supervisor of the home education program must submit a file with two types of documentation, a portfolio of records and an annual written evaluation of the child's work. *Id.* § 13–1327.1(e)(2). The supervisor may choose any person qualified under the Code to make the evaluation.

factor. Instead, the trial court found the following factors to be significant in denying Father's request for the trial court to order his children to attend public school: "1) The children have a significant history of home education; 2) The children are doing extremely well being home educated; 3) Despite only a high school education, Mother has sought outside resources to supplement the home education; and 4) Father has been relatively uninvolved in the children's education to date." Trial Court Opinion, 8/27/07, at 8. After a careful review of the record, we determine that the trial court's "incontrovertible factual findings support its factual conclusions[.]" *A.J.B.*, 945 A.2d at 746 (quoting *Helsel v. Puricelli*, 927 A.2d at 254–255). Applying the best interests standard, we thus conclude that the trial court did not err in denying Father's petition for special relief.

¶ 29 Order affirmed.