J-S10016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MOLLY MARIE SCHWARTZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON MICHAEL DEVINE | : | No. 1818 MDA 2024 |

Appeal from the Order Entered November 14, 2024
In the Court of Common Pleas of Columbia County Orphans' Court at
No(s): 2022-CV-0001051-CU

BEFORE: BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY OLSON, J.:            **FILED JUNE 04, 2025**

Appellant, Molly Marie Schwartz ("Mother"), appeals from the child custody order entered on November 14, 2024. We affirm.

The trial court briefly summarized the facts of this case as follows:

Mother and [] Brandon Michael Devine, [("Father")], are the parents of [a five-year-old] minor child[,] E.G.D. [("Child")].

Mother filed a complaint in custody and relocation on December 9, 2022, after she had relocated [with Child] to the State of Delaware [from Columbia County, Pennsylvania]. On February 21, 2023, the [trial] court entered an order granting the parties shared legal and physical custody of [Child].

On November 21, 2023, Mother filed a petition for special relief in custody, again seeking confirmation of Mother's relocation to Delaware and requesting primary [physical] custody as [Child] would soon be entering school.

The petition for special relief seeking primary custody for Mother and approval of the relocation to Delaware was heard on August 28, 2024[.]

Trial Court Opinion, 11/14/2024, at 1 (superfluous capitalization and original parenthetical omitted).

Moreover, the trial court noted that "[a]lthough Mother filed [her petition for special relief] indicating that she was again seeking relocation from Columbia County to Delaware, at the time of the [August 28, 2024] hearing her testimony had changed and she testified that she was selling her home in Delaware, moving to Catawissa[, Pennsylvania] (Columbia County) and intended to enroll [Child] in a school where her [new] husband's extended family was available to help." *Id.* at 2. At the August 28, 2024 hearing, Mother testified that she had, in fact, enrolled Child in kindergarten in the Southern Columbia School District where Child was attending school at the time of the hearing. Mother believed that Child should continue her education in the Southern Columbia School District and was looking to buy or build a home in that school district. N.T., 8/28/2024, at 30-37; *id.* at 41 ("I feel like with the Southern School District, they have the blue ribbon award which is for overall academic excellence."). Father, however, testified that Child was also enrolled in the Berwick Area School District where he and his extended family live. *Id.* at 96. Father wanted Child to attend school there instead of the Southern School District. *Id.*

On November 14, 2024, the trial court entered a final order, and accompanying opinion, reaffirming the parents' shared physical and legal custody of Child, subject to following additional conditions, currently at issue on appeal:

- 2 -

The [trial] court [found] that Mother ha[d] not met the required burden of proof to establish relocation to the Southern Columbia School District, coupled with the fact that Father ha[d] established by a preponderance of the evidence that [it was] in the best interests of [Child] that [Child] attend the Berwick Area School District.

The [trial court] also recognize[d] that [Child] is currently enrolled in Kindergarten [in] the Southern Columbia School District and believe[d] Mother and Father should consider whether it is in [Child's] best interests to allow her to complete Kindergarten [in the] Southern Columbia [School] District [f]or the 2024-2025 school year. If an agreement is not reached, then this determination is solely Father's.

If [Child] completes Kindergarten in the Southern [Columbia] School District by mutual agreement of the parties, then Mother shall assist Father with registration and transfer to the Berwick Area School District[.]

Effective the date of this order:

[Child] shall attend the Berwick Area School District.

The parties shall share legal and physical custody of [Child].

The parties shall equally share and divide transportation.

Trial Court Opinion and Order, 11/14/2024, at 9. Mother's timely appeal resulted.[1]

_____

[1] Initially, we note the November 14, 2024 order was final because, as explained in detail later, the trial court evaluated the statutory factors pertaining to custody modification and the best interests of Child and future proceedings were not contemplated. **See** Pa.R.A.P. 341(b)(1) (a final order is any order that disposes of all claims and all parties); **see also G.B. v. M.M.B.**, 670 A.2d 714 (Pa. Super. 1996) (a custody order is final and appealable after the trial court has concluded its hearings on a matter and the resultant order resolves the pending custody claims by the parties; such a decision as to finality supports the best interest of the child, judicial economy, and upholds the integrity of the trial court's process in deciding custody
*(Footnote Continued Next Page)*

On appeal, Mother presents the following issues for our review:

I.      The trial court erred as a matter of law and/or [abused] its discretion in considering the instant case to be a "relocation case" under 23 Pa.C.S.[A.] § 5337 and placing the burden on [Mother] under the relocation statute, as [Mother's] return to Catawissa, Pennsylvania, did not constitute a "relocation" because it did not impair the parties' equally shared physical custody schedule of [Child], and instead, facilitated the parties' custody schedule.

II.     The trial court erred as a matter of law and/or [abused] its discretion in permitting [Father] the choice of school district as the trial court effectively afforded [Father] sole discretion as tiebreaker and sole legal custody as to the issue of the minor child's school district.

III.    The trial court erred as a matter of law and/or [abused] its discretion [in examining various custody factors and ordering special conditions pertaining to school, which were] unsupported by the evidence of record[.]

_____

matters by avoiding piecemeal appeals that subject a child to uncertainties from such premature challenges). Mother filed a timely notice of appeal on Monday, December 16, 2024. *See* Pa.R.A.P. 903(a) (to preserve the right to appeal, an appellant must generally file a notice of appeal within 30 days after the order appealed from is entered); *see also* 1 Pa.C.S.A. § 1908 (excluding Saturday and Sunday from the computation of time when the last day of the time period falls on a weekend). Mother also filed a corresponding concise statement of errors complained of appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court issued another opinion pursuant to Pa.R.A.P. 1925(a) on January 7, 2025, wherein the trial court "clarified that the issue in this case centers around the school [Child] will attend." Trial Court Opinion, 1/7/2025, at 2. The trial court further opined that "[t]he parties both reside in the same county, with the school districts lying approximately 30 minutes apart; making shared physical custody tenable." *Id.* Thus, the trial court recognized "[h]owever, the decision on [designated school attendance was not to be decided] in a vacuum of just comparing the two schools proposed by the [p]arents, [and required] an analysis of the 'best interest' factors as well as assessing the 'relocation' from (potentially) one school to another." *Id.*

Appellant's Brief at 21 (complete capitalization omitted).[2]

In her first issue presented, Mother claims that the trial court "was apprised" at the August 28, 2024 hearing "that [her] relocation petition was no longer at issue, and was therefore, moot" and that the only issue before the court "was whether [Child] would attend the Southern Columbia School District or the Berwick Area School District." *Id.* at 24 (unnecessary capitalization omitted). Mother claims, however, that the trial court "inexplicably engage[d] in an analysis of the [r]elocation [f]actors under [23 Pa.C.S.A.] § 5337(h), thereby placing the burden of proof on" her. *Id.* at 24; *see also id.* at 27 ("In undertaking the analysis of the [r]elocation [f]actors under § 5337, the [t]rial [c]ourt improperly placed the burden of proof on [Mother] to show that her relocation back to this local area was in the best interests of [Child]. The placement of this legal burden is a clear error of law. This Court must use its plenary scope of review to vacate the [t]rial [c]ourt's decision and [o]rder a new trial only on the issue of school choice.") (internal citations omitted). Next, relying upon *Hill v. Hill*, 619 A.2d 1086 (Pa. Super. 1993), Mother posits that "the concept of shared legal custody does not contain the principle of giving one parent final authority in the event of a dispute" or "to grant one party legal decision-making power as a 'tiebreaker.'" Mother's Brief at 39.

---

[2] We have reorganized Mother's issues for ease of discussion and disposition but examine all of Mother's interrelated issues together.

Finally, Mother contends that the trial court's conclusions regarding several of the 16 custody factors were "not supported by the evidence of record and certain material facts [were] erroneously interpreted." Mother's Brief at 30. More specifically, Mother claims that the trial court erred by stating, without supporting evidence, that it was uncertain whether Mother might move again for employment purposes. *Id.* at 30-31. Mother maintains "she took the initiative to enroll [Child] in the Southern Columbia School" and that if she had not, Child "may not have attended school" until ordered by the court, as Father "had limited knowledge regarding the Berwick Area School District" and was only concerned about the "proximity to his residence." *Id.* at 32-34. Similarly, Mother argues the trial court failed to consider which party has attended to the daily physical, emotional, developmental and special needs of Child, wherein Mother again posits that she "took the initiative to have Child enrolled" in school. *Id.* at 34. Mother argues that she "had no difficulty with transportation requirements and childcare responsibilities [in] the Southern Columbia Area School District[, but] testified that she would have difficulty transporting [Child] if the trial court directed [Child] attend the Berwick Area School District" considering that Father already "was taking [Child] to and from school from the Southern Columbia School District, as his flexible schedule permitted[.]" *Id.* at 36. On this final issue, Mother argues that "the trial court's unsupported analysis and erroneous interpretations of factual statements/conclusions … must be vacated and [Mother] awarded a new trial." *Id.* at 37.

- 6 -

We adhere to the following standards of review:

We review a custody order for an abuse of discretion. We will not find an abuse of discretion merely because we would have reached a different conclusion than the trial court. Rather, we will find an abuse of discretion only if the trial court overrode or misapplied the law in reaching its conclusion, or the record shows the trial court's judgment was manifestly unreasonable or the product of partiality, prejudice, bias, or ill will.

Our scope of review is broad. Since this Court does not make independent factual determinations, we must accept findings of the trial court that are supported by competent evidence of record. Importantly, we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand. However, we are not bound by the trial court's deductions or inferences.

In a child custody case, the best interest of the child is paramount. Once a custody arrangement is established by order, **a court may modify it at any time upon a party's petition if the modification serves the best interests of the child**.[3] To that end, the Child Custody Act sets forth sixteen factors that a court must consider before making any custody determination, including a modification of a custody order. Therefore, it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case.

The statutorily required factors are as follows:

(a) Factors.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

_____

[3] "A party seeking modification of custody arrangements has the burden to show that modification is in the child's best interest." **Johns v. Cioci**, 865 A.2d 931, 937 (Pa. Super. 2004).

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

***Babner v. Baer***, 276 A.3d 225 (Pa. Super. 2022) (internal quotations and most citations omitted; emphasis added).

However, this Court has also stated:

We long have recognized that, when parties share legal custody of a child, they may reach an impasse in making decisions for the child that implicate custody. When that happens, the parties turn to the trial court to decide their impasse. ***See***, ***e.g.***, ***Staub v. Staub***, 960 A.2d 848 (Pa. Super. 2008) (deciding between public and home schooling); ***Fox v. Garzilli***, 875 A.2d 1104 (Pa. Super. 2005) (ordering that children would attend school in mother's school district); ***Dolan v. Dolan***, 548 A.2d 632 (Pa. Super. 1988) (deciding between public and parochial school). This type of court intervention does not affect the form of custody and hence, the 5328(a) best interest factors do not all have to be considered.

***S.W.D. v. S.A.R***., 96 A.3d 396, 404 (Pa. Super. 2014).

Moreover, we rejected an argument similar to Mother's current claim based upon ***Hill*** in our 2021 decision, ***B.S.G. v. D.M.C.,*** 255 A.3d 528, 534 (Pa. Super. 2021). Therein, we explained:

The ***Hill*** case concerned a situation in which the court's order awarded parents shared legal custody, but "[i]n the event of disagreement, [m]other's preference [would] prevail." [***Hill***], 619 A.2d] at 1088. On appeal, this Court held that the trial court had given "the father authority in name only and deprived him of a legal remedy because he was already awarded 'shared legal custody.'" ***Id.*** We further stated that "the concept of shared legal custody does not contain the principle of giving one parent final

- 9 -

authority in the event of a dispute." *Id.* at 1089 (relying on *In re Wesley J.K.*, 2445 A.2d 1243 (Pa. Super. 1982)).

On the question of whether a court may confer sole authority to one parent in limited situations without undermining shared custody, it is salient to recognize that [w]hereas *Hill* involved an order granting to the mother exclusive power to decide literally every potential disagreement between the parties, which, this Court concluded, effectively nullified the existing shared legal custody arrangement, the order in [*B.S.G.*] limit[ed] the grant of sole authority to four discrete, albeit important, decisions necessary to surmount impasse on the selection of [the child's] school, pediatrician, therapist, and dentist, and it [gave] each parent sole authority over at least one decision.

Critically, therefore, the order [in *B.S.G.* did] not extend unilateral power beyond these several initial selections, thus making the parties' future decisions implicating [their child's] interests within the broader educational, medical, psychotherapeutic, and dental contexts subject to the collaborative decision-making process typically required of both parents who share legal custody.

Thus, we disagree[d] that *Hill* altogether foreclose[d] a court's exercise of discretion to give final decision-making power to one parent over certain limited choices to be made in a [child's] life where … the record establishes parents have effectively reached impasse on such matters. The best interests of the child may require that such choices be made more expeditiously than through repeated petitioning of the courts, and there will be instances where a court may preserve the essence of a shared custody arrangement while selecting as the final arbiter a parent who has exhibited good faith and acceptable judgment on the issue.

*B.S.G. v. D.M.C.*, 255 A.3d 528, 534 (Pa. Super. 2021); *compare S.W.D. v. S.A.R*., 96 A.3d at 404 (when parties share legal custody of a child, they may reach an impasse in making decisions for the child that implicates custody, and the parties turn to the trial court to decide their impasse).

Finally, this Court has stated:

This Court's scope of review in custody cases consistently has been defined by our Supreme Court as very broad. Nonetheless a broad scope of review should not be construed as providing the reviewing panel with a license to nullify the fact-finding functions of the court of first instance. [Within the context of appellate review], we are empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but may not interfere with those conclusions unless they are unreasonable in view of the trial court's findings, and, thus, represent a gross abuse of discretion. Custody decisions are to be made on the basis of the child's best interests.

\*          \*          \*

It is not this Court's function to determine whether the trial court reached the "right" decision; rather, we must consider whether, based on the evidence presented, given due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion in awarding custody to the prevailing party.

*King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (internal citations and most quotations omitted).

Here, Mother filed a petition for special relief in custody on November 21, 2023, averring that she relocated to the State of Delaware, the parties already shared physical custody of Child, that Child was scheduled to begin Kindergarten in 2024-2025, and that the parties had not reached an agreement regarding primary physical custody for the academic school year. Mother's Petition for Special Relief in Custody, 11/21/2023, at ¶¶ 5-8. Mother requested an evidentiary hearing. *Id.* at ¶ 9. At the time of the hearing on August 28, 2024, Mother had returned to Catawissa, Pennsylvania from Delaware; Mother had lived in Catawissa for two months when the August 2024 hearing commenced. N.T., 8/28/2024, at 3-4. Mother testified that she

moved to the area because it was an approximate 20-minute drive to Father's home. *Id.* at 8. Father remained in his residence in Berwick, Pennsylvania after Mother left in March 2023. *Id.* at 14-15. Accordingly, the parties, who share legal and physical custody, reached an impasse about the choice of school Child would attend. As such, Mother called upon the trial court to resolve the dispute.

Moreover, there is no disagreement that the trial court considered the 16 factors pertaining to the best interest of Child as required for a custody determination under Section 5328 before it made a final decision. *See* Mother's Brief at 29 ("[T]he [trial c]ourt did analyze the [c]ustody factors under 23 Pa.C.S.[A.] § 5328(a)."). More specifically, the trial court weighed each party's testimony and examined each of the 16 factors pertaining to the best interest of Child as required. Trial Court Opinion, 1/7/2025, at 5-8 (specific examination of each of the 16 custody factors under Section 5328). However, we note that in reaching an impasse such as the one presented instantly, the trial court did not affect the form of custody and hence, the trial court was not even required to consider all of the Section 5328(a) best interest factors but ultimately did anyway.

Finally, the trial court acknowledged that "Mother's choice [of school] slightly outperform[ed] Father's choice in certain areas" but that Father's choice presented "a slightly larger and varied diversity experience" and that Father's proximity and work schedule was more flexible to allow him, as well as his extended family, to get Child to and from the Berwick Area School

- 12 -

District. *Id.* at 6-7. Giving due deference to the trial court's weight and credibility determinations, as required, we conclude that the trial court's findings were not unreasonable or represent a gross abuse of discretion. Where the trial court has carefully considered the evidence and the credibility of the witnesses, drawn logical inferences from the evidence, and properly applied the pertinent principles of Pennsylvania law, we simply cannot reweigh the evidence to come to the "right" decision as suggested by Mother. Our standard of review does not allow this Court to alter a trial court's decision that is supported by the record. For all of the foregoing reasons, Mother is not entitled to relief.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/04/2025