J-S01004-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ADAM W. BROWN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASHLEY M. KUDRANSKI | : | |
| | : | |
| Appellant | : | No. 1108 WDA 2025 |

Appeal from the Order Entered August 26, 2025
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD-19-007686-005

BEFORE:   BOWES, J., PANELLA, P.J.E., and STEVENS, P.J.E.*

MEMORANDUM BY BOWES, J.:                    **FILED: MARCH 13, 2026**

Ashley M. Kudranski ("Mother") appeals from the August 26, 2025 order entered following a school choice hearing, directing that her nearly six-year-old daughter ("C.K.") attend school in the district where Adam W. Brown ("Father") resides.  We affirm.

C.K. was born to Mother and Father approximately three months after they terminated their brief, fourteen-month, marriage in an August 2019 divorce decree.  Father initiated this custody litigation in December 2019. For nearly four years, the parties shared legal and physical custody of C.K. through a series of interim custody orders.  During this period, Father resided in Monongahela, Pennsylvania and Mother lived approximately thirty

_____

* Former Justice specially assigned to the Superior Court.

minutes away in Bethel Park, Pennsylvania. Mother eventually remarried, and in July 2023, she moved with C.K. to Harrison City, Pennsylvania, which is about forty-five minutes from Father's home and is in the Penn Trafford School District. On July 11, 2023, Father filed a counter-affidavit formally opposing the relocation pursuant to 23 Pa.C.S. § 5337(d).

On December 1, 2023, the parties entered a consent order agreeing to share equally physical custody on a 5-2-2-5 schedule.[1] The consent order also resolved Father's pending objections to Mother's relocation and provided that, if the parties could not agree on a preschool for C.K. located equidistant between their current residences, Father would decide which preschool that C.K. attend for the remainder of the 2023–2024 school year. Critically, it was further agreed that Father's selection would not constitute the *status quo* for deciding where C.K. attends preschool in future years. Father eventually enrolled C.K. in a preschool near his residence in the Elizabeth Forward School District. The following academic year, with the custody court's imprimatur, the parties enrolled C.K. in preschool programs in each of their respective districts and she attended dual programs for the 2024-2025 school year based upon the custody schedule. **See** Order, 8/2/25, at 1 ("Each parent shall be free to enroll the Child in, and to have

---

[1] Pursuant to this type of custody rotation, each parent is assigned a dedicated two-day period of physical custody, and alternate custody during the remaining three-day period. Thus, every other week, each parent exercises physical custody for five consecutive days.

the Child attend, the preschool of his or her choice during that parent's custody time").

As C.K. was approaching the age for kindergarten, Mother and Father continued to disagree over which school district she would attend during the 2025-2026 academic year. Following an unsuccessful conciliation conference, the trial court scheduled an evidentiary "hearing in which the Court shall act as arbiter to resolve the impasse regarding the discrete, ancillary issue as to where the Child shall attend school[.]" Order, 8/11/25 at 1. Father testified during the ensuing hearing and presented two witnesses: Nancy Brown, the paternal grandmother, and Brenda Lee Silman Facekis, a teacher at C.K.'s preschool. Father maintained that his rigid work schedule would hamper his ability to transport C.K. to and from the half-day kindergarten program in the Penn Trafford School District. He also indicated that Penn Trafford's truncated school day would require additional childcare that would be unnecessary if C.K. attended Elizabeth Forward's full-day program. Mother testified on her own behalf. Of note, while the trial court sustained hearsay objections to nine of Mother's thirty-six trial exhibits, it overruled Father's objections to Mother's testimony concerning her research and the content of the barred exhibits. After the evidence was presented, the trial court took the matter under advisement, and in an order docketed on August 26, 2025, the court directed that "[C.K.] shall attend school in the Elizabeth Forward School District." **See** Order, 8/26/25 at 1.

Significantly, the order did not address any aspect of legal or physical custody.

This timely appeal followed. Mother complied with Pa.R.A.P. 1925(a)(2)(ii), and presented three issues for our review:

1. Did the trial court commit an abuse of discretion/error of law by not issuing comprehensive findings of fact by utilizing the . . . custody factors [enumerated in] 23 Pa.C.S. [§] 5328 [following] the August 11, 2025 School Choice Hearing was held?

2. Did the trial court commit an abuse of discretion/error of law by not permitting [Mother] to submit evidence necessary on the record to determine which school district was a better choice per the best interest of the child?

3. Did the trial court commit an abuse of discretion/error of law by not utilizing the best interest of the child standard in making the decision regarding which parent was able to make the decision regarding school choice?

Mother's brief at 3-4.

We review the custody court's order for an abuse of discretion, accepting the court's factual findings that are supported by competent evidence of record and deferring to its assessment of credibility and weight of the evidence. **Graves v. Graves**, 265 A.3d 688, 693 (Pa.Super. 2021). "We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." **Id**. at 693 (citation omitted). Ultimately, "the test is whether the evidence of record supports the trial court's conclusions." **Smith v. Smith**, 281 A.3d 304, 312 (Pa.Super. 2022).

Mother's first issue concerns whether the trial court erred in neglecting to consider the best interest factors enumerated in 23 Pa.C.S. § 5328(a), in deciding the isolated issue concerning school choice. In this vein, we have previously determined that a comprehensive review of the § 5328(a) factors is not warranted where, as here, parties who share legal custody invoke the trial court to resolve a detached stalemate concerning school choice. We explained,

> We long have recognized that, when parties share legal custody of a child, they may reach an impasse in making decisions for the child that implicate custody. When that happens, the parties turn to the trial court to decide their impasse. ***See, e.g., Staub v. Staub***, 960 A.2d 848 (Pa.Super.2008) (deciding between public and home schooling); ***Fox v. Garzilli***, 875 A.2d 1104 (Pa.Super.2005) (ordering that children would attend school in mother's school district); ***Dolan v. Dolan***, 548 A.2d 632 (1988) (deciding between public and parochial school). This type of court intervention does not affect the form of custody and hence, the 5328(a) best interest factors do not all have to be considered.

***S.W.D. v. S.A.R.***, 96 A.3d 396, 404 (Pa.Super. 2014) (cleaned up); ***see also S.S. v. K.F.***, 189 A.3d 1093, 1098 (Pa.Super. 2018) ("When parties cannot resolve a dispute about where to educate their children, the court may act as arbiter to decide that issue, based on the best interests of the children.").

Instantly, Mother recognizes that the custody court simply decided which of the proffered school districts that C.K. will attend. However, rather than accept that the court's school-choice decision did not warrant a review of the statutory factors, she argues that since she requested "sole legal

custody" for the limited purpose of school choice, the court was required to address the custody factors in awarding this form a custody. Mother's brief at 11-12. Alternatively, she asserts that even if the court's determination did not implicate some form of custody, "the trial court should have considered the custody factors" because it required "a greater level of consideration from the trial court." *Id*. at 12. We address Mother's contentions *seriatim*.

Starting with Mother's declaration that she sought a narrow form of legal custody, we first observe that this assertion is founded entirely on the proposed court order that she attached to her pretrial statement, *i.e.*, "Ashley Kudranski, shall have sole legal custody of the minor [c]hild . . . for the limited purpose of school choice [and] Ashley Kudranski, may enroll said minor child in the Penn Trafford School District." Mother's Pretrial Statement, 8/5/24, Proposed order. However, notwithstanding the manner that Mother framed her proposed order, the record demonstrates that she did not seek legal custody to decide the issue unilaterally insofar as she never actually sought any form of custody from the trial court in either the pretrial statement or, more importantly, during the school choice hearing. Critically, all the evidence Mother adduced during the school choice hearing related to the advantages that would inure to the benefit of C.K. by attending the Penn Trafford School District and not, as Mother's present contention suggests, Mother's capacity to make the determination

unilaterally. It is beyond argument that Mother and Father intended for the court to decide which school district that C.K. would attend, thereby resolving their impasse on this isolated issue. Thus, this aspect of mother's argument is unconvincing. *See S.W.D.* , 96 A.3d 404. (finding review of custody factors unnecessary because court "merely acted as an arbiter, and decided [c]hild's place of schooling [when] the parties could not agree on this issue").

As to Mother's alternate claim that the court's selection of a kindergarten program for C.K. warranted a comprehensive review of the custody factors, the trial court did not err by declining to address the § 5338(a) factors in resolving this educational stalemate. Plainly, the prevailing authority does not require a trial court to consider the § 5323(a) custody factors in this situation. *See id*. As the *S.W.D.* court explained in rejecting a similar notion in a school-choice case:

> Many custody-related issues raised in motions are similar to the one in the case: a single discrete and narrow issue ancillary to the award of custody. It would be burdensome for a trial court to have to consider all [§ 5328] factors explicitly on the record every time a litigant argues a motion seeking, for example, to change the custody exchange location or to decide whether a child plays sports in one parent's municipality or the other's. Without a doubt, a trial court must consider a child's best interest in ruling upon such motions. **But our statutes require neither a consideration of all [§ 5328] factors nor delineation of the court's rationale on the record unless the ruling awards custody or modifies an award of custody**.

*Id*. at 402 (emphasis in original). Accordingly, insofar as our holding in

*S.W.D.* proves Mother's arguments false, this contention also fails.[2]

Mother's second issue concerns the trial court's decision to exclude, as

violating the rule against hearsay, several of her exhibits relating to the

relative strengths and weaknesses of the two school districts. This Court has

outlined the relevant legal principles thusly,

> It is well settled that "[t]he admissibility of evidence is within the sound discretion of the trial court, which appellate courts will not disturb absent an abuse of discretion or error of law." *Viall v. Garvin*, 318 A.3d 905, 922 (Pa.Super. 2024) (citation omitted). "An abuse of discretion ... requires demonstration that the lower court's decision was a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support from the evidence or the record so as to be clearly erroneous." *Id.* (citation omitted).
>
> Our rules of evidence "define 'hearsay' as an out of court statement offered in court for the truth of the matter asserted." *Carlini v. Glenn O. Hawbaker, Inc.*, 219 A.3d 629, 640 (Pa.Super. 2019) (citation omitted). Hearsay is generally not admissible, subject to several exceptions. *See* Pa.R.E. 802.

*Jones v. Foods on First III, Inc.*, 345 A.3d 231, 245 (Pa.Super. 2025).

"In addition, for a ruling on evidence to constitute reversible error, it must

---

[2] For the identical reasons, we reject Mother's related claim that the trial court erred in failing to issue its explanation for the order until after she filed the instant appeal. Stated plainly, absent an award of some form of custody, the trial court is not required to delineate it decision pursuant to 23 Pa.C.S. § 5323(d). *See S.W.D. v. S.A.R.*, 96 A.3d 396, 404 (Pa.Super. 2014) ("[O]ur statutes require neither a consideration of all [§ 5328] factors nor delineation of the court's rationale on the record [in accordance with § 5323(d)] unless the ruling awards custody or modifies an award of custody.").

have been harmful or prejudicial to the complaining party." ***Phillips v.***
***Lock***, 86 A.3d 906, 920 (Pa. Super. 2014) (citation omitted).

Mother contends that, collectively, "the proffered exhibits should be
admissible under the hearsay exception outlined in Pa.R.E. 803(17)," which
concern Market Reports and Commercial Publications that are generally
relied upon be the public. Mother's brief at 15. She reasons that the school-
related information would be trusted by the public "when determining which
school to enroll their [c]hild in for Kindergarten or where to move to ensure
their [c]hild obtains a robust education." ***Id***.

Regardless of whether the exhibits constituted either market reports or
commercial publications admissible pursuant to Rule 803(17), we need not
determine if the trial court erred in refusing to admit the exhibits because
Mother cannot demonstrate that the trial court's evidentiary ruling was
prejudicial. As noted *supra*, the trial court permitted Mother to discuss the
gist of her exhibits in explaining the results of her research. Accordingly,
although the documents were not admitted into evidence, the content of the
exhibits was made known to the trial court. Thus, assuming arguendo that
the exhibits were admissible, any such error by the trial court in failing to
admit them was harmless and did not prejudice Mother. ***See***
***Commonwealth v. Jacoby***, 170 A.3d 1065, 1085 (Pa. 2017) (harmless
error in the admission of evidence can be found where "the error did not
prejudice the [party] or the prejudice was *de minimis*"). Consequently, we

need not address Mother's contention that each of the nine exhibits were admissible pursuant to Rule 803(17).[3]

Mother's final issue challenges the trial court's conclusion that attending kindergarten in the Elizabeth Forward School District served C.K.'s best interest. The trial court provided the following rationale for its determination.

> In reaching a decision in this matter, this court applied the best interest of the child standard in determining which school the child should attend. On balance, the parties are both well-adjusted, mature parents who clearly love the child and dedicate themselves to her success. Little compelling evidence was presented regarding the relative merits of the Elizabeth Forward School District or the Penn Trafford School District. . . . Elizabeth Forward will be a full-day program whereas Penn Trafford will be a half-day program with after/pre-care at additional cost. This court's decision turned upon testimony regarding the availability of the parties and the child's current and past enrollment in the preschool program, which is aligned with the Elizabeth Forward School District. The child spent three-year-old preschool, and about half of four-year-old preschool in this program, and has established friendships there. The full day kindergarten program and its alig[n]ment with where the child has spent a majority of her pre-K time serve the [c]hild's bests interests for continuity of education.

_____

[3] Mother raises a putative claim of prejudice in arguing that, when bolstered by the documentary evidence outlined in the nine exhibits, her testimony regarding the relative merits of the school districts was more convincing than Father's and would have overcome the court's characterization that "little compelling evidence was presented regarding the relative merits of the [schools]." Mother's brief at 16 (quoting Trial Court Opinion at 12). While phrased as implicating prejudice, this contention assails the trial court's assessment of the weight of the evidence and its credibility determinations, which we address in rejecting Mother's third issue on appeal.

Additionally, and quite importantly, Father works full time, Monday through Friday from 7:00 A.M. until 3:30 P.M. His parents assist with transportation and childcare. Mother works part time, and adapts her schedule to work on weekends and during periods where she does not have custody. She has a great deal of flexibility in her schedule, whereas Father does not. She is available and capable of transporting the child to the full day program. Attending this program also allows Father to participate in school activities and after school programs where if the Child attended Penn Trafford, he could not.

Trial Court Opinion, 10/9/25, at 12-13 (cleaned up).

Mother's argument assails the trial court's best-interest determination on two fronts. First, she appears to argue that the trial court erred in considering "the [c]hild's relationships with the other children at the preschool in [Father's] school district" because the 2023 consent decree provided that Mother's assent to C.K. attending an Elizabeth Forward preschool during the 2023-2024 school year would not constitute the status quo for determining where she will attend in future years. Mother's brief at 18. However, despite framing her argument in this manner, Mother does not actually assert that the 2023 consent decree precluded the court from considering C.K.'s experiences in Father's school district in determining the child's best interests. Plainly, it did not. The parties' agreement simply prevented Father from forcing upon Mother the burden to alter the child's school for future academic years. In fact, the parties employed the at-issue provision as intended when they returned to the matter of school choice for the 2024-2025 school year and, rather than deeming the Elizabeth Forward School District as the status quo, they enrolled C.K. in dual preschool

- 11 -

programs and the child nurtured relationships in both locations. Indeed, in conceding that the trial court's "concern about continuity" is a legitimate, important factor in the best-interest determination, Mother acknowledges that the consent order in no way prevented the trial court from considering that information in forming its decision. *Id*. Accordingly, this facet of Mother's argument is unavailing.

The second aspect of Mother's challenge to the trial court's best-interest analysis relates to the court's role as the ultimate arbiter of facts. *Id*. at 19-21. In this regard, Mother asserts that the trial court misstated the duration that C.K. attended the Elizabeth Forward preschool during the 2023-2024 school year and she makes various assertions that implicate the court's assessment of the weight of the evidence and its credibility determinations. *Id*. 18-20. As to the latter, Mother complains that the trial court discounted her evidence concerning the relationships that C.K. fostered while attending preschool in the Penn Trafford School District and while participating in extracurricular activities in the district. *Id*. Specifically, she opines, "It is unclear why the trial court weighed the friendships in [Father's] school district over those in [Mother's] school district when the evidence shows that [C.K.] has greater ties to the area and children in [Mother's] school district than [Father's]." *Id*. Finally, Mother points to the trial court's supposed bias because "throughout the [Rule 1925(b)] opinion, [it] made several compliments to [Father] and his actions, but did not include any

compliments for [Mother], despite stating that both parents are well-adjusted, mature, and dedicate themselves to the [C.K.'s] success. *Id*. at 20-21. In conclusory fashion, she opines, "It is apparent that the trial court was biased in making its decision rather than properly weighing the evidence and considering [C.K.'s] best interest." *Id*. at 20. Again, no relief is due.

First, to the extent that Mother is leveling a genuine claim of trial court bias, it is waived because she neglected to raise it before the trial court or otherwise seek the recusal of the jurist assigned to this case. As we recently reiterated in a non-precedential decision that we cite for persuasive value,

> It is . . . axiomatic that this Court "presumes judges are fair and competent." *Lomas v. Kravitz*, 170 A.3d 380, 389 (Pa.Super. 2017). Our Supreme Court has explained, "once the trial is completed with the entry of a verdict, a party is deemed to have waived his right to have a judge disqualified, and if he has waived that issue, he cannot be heard to complain following an unreasonable result." *Reilly by Reilly v. Southeastern Pennsylvania Trans. Authority*, 489 A.2d 1291, 1300 (Pa. 1985).

*See Mattew Jarred Hopkins v. Rachel Hopkins and Paul J. Joseph*, 2026 WL 593120, at *3 (Pa. Super. 2026) (non-precedential decision) (cleaned up). While this matter involves neither a trial nor a verdict, the identical principle applies. Mother did not assert the trial court's bias during the evidentiary hearing or in her Rule 1925(b) statement. Hence, the issue is waived and Mother cannot be heard to complain at this juncture. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot

- 13 -

be raised for the first time on appeal."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [s]tatement ... are waived.").

Furthermore, even to the extent that Mother referenced the court's supposed bias as mere hyperbole, we find no basis to disturb the trial court's decision to enroll C.K. in a kindergarten associated with the Elizabeth Forward School District. In reaching that decision, the trial court focused on Mother's ability to transport C.K. to school during her custodial periods, Father's comparative difficulty in transporting the child to the Penn Trafford School District, the benefit of Elizabeth Forward's full-day kindergarten program over the half-day program in Mother's district (which would require additional child care costs), the child's relationships in both school districts, and the benefit of maintaining continuity in her education.

Instantly, Mother's assertions of trial court error simply ask that we reweigh the evidence adduced during the hearing to reach conclusions in her favor, which we will not do. It is beyond cavil that a party cannot dictate the weight that the trial court attributed to the evidence. Indeed, as we explained in *M.J.M. v. M.L.G*., 63 A.3d 331, 339 (Pa.Super. 2013), "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." We simply will not revisit the trial court's factual findings that are based on the certified record to reassess the weight of the evidence. *J.R.M. v J.E.A.*, 33 A.3d 647, 650 (Pa.Super. 2011) ("[W]ith regard to issues of credibility and weight of

the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand[.]").  Thus, notwithstanding the trial court's apparent five-month miscalculation of C.K.'s pre-school program in 2023, inasmuch as the certified record sustains the trial court's findings of fact in relation to where the child should attend kindergarten in 2026, we do not disturb them.  *Smith*, 281 A.3d 304, 312 (pertinent test in reviewing custody order is whether evidence of record supports the trial court's conclusions.).  Having reviewed the certified record, we discern neither an abuse of discretion nor legal error in the trial court's determination that attending kindergarten in the Elizabeth Forward School District serves C.K.'s best interest.

Order affirmed.

P.J.E. Stevens joins this Memorandum.

P.J.E. Panella Notes Dissent.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/13/2026